**UNITED STATES of America, Plaintiff,**

v.

**Jacqueline Marie DENONCOURT, aka Samantha Anderson, Defendant.**

**No. 90–00855 ACK.**

United States District Court,
D. Hawaii.

Oct. 31, 1990.

Daniel A. Bent, R. Michael Burke, Ass't U.S. Atty., U.S. Attys. Office, Honolulu, Hawaii, for plaintiff.

Donna Gray, Asst. Federal Public Defender, Honolulu, Hawaii, for defendant.

## SENTENCING ORDER

KAY, District Judge.

Jacqueline Denoncourt appeared before this Court on August 22, 1990 to be sentenced pursuant to a single-Count indictment for violation of Title 8 U.S.C. § 1326, to wit, Miss Denoncourt, an alien who had been previously deported from the United States to Canada, knowingly and unlawfully entered the United States without having obtained the consent of the Attorney General of the United States, a Class E Felony.

Miss Denoncourt was arrested on May 24, 1990 and pled guilty on June 28, 1990. Because the offense occurred after November 1, 1987, the Sentencing Reform Act of 1984 is applicable.

## FINDINGS OF FACT

There being no objections to the factual statements contained in the presentence investigation report ("PSI"), as modified at the hearing, the Court adopts those statements as its findings of fact. According to the PSI, information provided by the U.S. Attorney's Office indicated that Miss Denoncourt, a nineteen year-old Canadian citizen, initially entered the United States at New Haven, Connecticut, on or about December 18, 1989. Available information indicated she entered the United States for the purpose of engaging in prostitution and was recruited for that activity in Montreal, Canada.

Subsequent to engaging in prostitution in Boston, Massachusetts and San Francisco, California, Miss Denoncourt proceeded to Honolulu, Hawaii. Following arrival on January 14, 1990, Miss Denoncourt was arrested by the Honolulu Police Department ("HPD") for engaging in prostitution on January 17, 1990 and January 22, 1990. In addition, she was also arrested on January 22, 1990 for Pedestrian Soliciting Mo-

torist. Due to her failure to appear in State Court for the above charges, she was subsequently cited for criminal contempt of Court and arrested on April 23, 1990.

On May 24, 1990, after serving a thirty-day jail term imposed by Honolulu District Court for prostitution, Miss Denoncourt was arrested by the Immigration and Naturalization Service ("INS"). On June 8, 1990, Miss Denoncourt appeared before a United States Magistrate for an initial appearance. The Magistrate ordered her detained at the Oahu Community Correctional Center ("OCCC"). At the time of her sentencing she was still detained at OCCC.

According to investigative reports, on February 9, 1990, Miss Denoncourt appeared at the INS District Office and, upon identifying herself as a deportable alien, requested financial assistance to return to Canada. While being interviewed by the INS, she provided a sworn statement admitting to being an overstay and acknowledged a total of four arrests for prostitution or vagrancy based on engaging in prostitution in Boston and San Francisco. Based on the above, Miss Denoncourt was charged with remaining beyond the authorized stay and as an alien engaged in prostitution. On February 26, 1990, she was ordered deported to Canada. Subsequent to the issuance of a Warrant of Deportation, Miss Denoncourt was physically deported from the United States to Montreal, Canada on March 3, 1990.

Following her return to Hawaii and subsequent arrest by the HPD, Miss Denoncourt was debriefed by the INS at the police cellblock on April 24, 1990. While being interviewed, she admitted that she had illegally reentered the United States and acknowledged having been deported in March 1990. She informed investigators that she reentered the United States via Amtrak on April 21, 1990 at New Haven, Connecticut, and flew to Hawaii the following day. During further questioning, Miss Denoncourt refused to identify the person who had paid for her airfare to Hawaii and would not provide her local address in Waikiki. In addition, she advised investigators that

the purpose of her return to Hawaii was to further engage in prostitution and to visit friends. Notwithstanding this admission, Miss Denoncourt subsequently denied having returned to Hawaii for the purpose of engaging in prostitution. Based upon the foregoing information, an INS detainer was filed against Miss Denoncourt on April 24, 1990.

## APPLICATION OF GUIDELINES TO FACTS

Both parties agree that the applicable guidelines are as follows: a total offense level of 6 and a criminal history category of 1. Accordingly, Miss Denoncourt is subject to being sentenced under a guideline range from zero to six months imprisonment; one year of supervised release; a fine of from $500 to $5,000 (plus cost of imprisonment/supervision); and a $50 special assessment.[1]

### Motion for Upward Departure

The Government filed a Motion for Upward Departure based upon two grounds. First, citing United States Sentencing Commission Guidelines § 4A1.3, the Government argued that a departure upward was warranted due to the fact that Miss Denoncourt's criminal history category of 1 underrepresented the seriousness of her past criminal conduct and the likelihood that she would commit other crimes. The Government emphasized that Miss Denoncourt has a significant history of engaging in prostitution and that there was no indication she intended to deviate from such criminal conduct in the future.

Second, the Government noted that Miss Denoncourt was, at the time of her sentencing, more than six-months pregnant and that she expected to give birth in mid-November 1990. Because Miss Denoncourt had admitted to recent and substantial cocaine use, the Government argued that a departure upward as to incarceration was warranted in order to assure that Miss Denoncourt would receive sufficient drug rehabilitation to protect her unborn child

---

1. Restitution is not applicable.

and to improve his or her chance of proper parental care as a newborn infant.

After considering the merits of the Government's motion for an upward departure, as well as defense counsel's response thereto, this Court denies the Government's motion. The Court concludes that the Government has not established adequate grounds for an upward departure. Miss Denoncourt's uncounted prostitution arrests are not of such a serious nature under the Sentencing Guidelines provisions as to merit an upward departure. This is not to say that the Court does not recognize that prostitution in Waikiki is reprehensible and a serious problem and health threat. The Court's concern for the interests and rights of Miss Denoncourt's unborn baby shall be addressed below in the sentence.

## SENTENCE

■ As a nineteen year old, Miss Denoncourt has led a hard life which has involved engaging in prostitution and abusing drugs. She has been convicted of prostitution charges twice in the State of Hawaii, and arrested for prostitution twice in each of Boston and San Francisco, as well as in Montreal, Canada, where there is an outstanding prostitution charge against her. She has admitted to abusing cocaine on a daily basis for the past three years, although she asserts that she no longer abuses the drug.

Earlier this year she surrendered herself to the INS in order to receive free transportation back to Canada as a deportable alien. She admitted to overstaying her visa, as well as to the four arrests for prostitution in Boston and San Francisco. She was charged with remaining beyond the authorized stay and as an alien engaged in prostitution, and ordered deported. Less than two months after she was deported, she knowingly illegally reentered the United States, and returned to Hawaii. She initially told investigators that her purpose in returning to Hawaii was to further engage in prostitution and to visit friends, although she later denied having made such an admission.

The Court finds that Miss Denoncourt's flaunting of the laws of this country by knowingly illegally reentering the United States after deportation constitutes an aggravating circumstance justifying imprisonment at the top of the guideline range of zero to six months, as recommended by the Probation Office. The Court also notes that the Government had moved for an upward departure for a longer period of incarceration. After considering the sentencing objectives of punishment and deterrence, as well as her criminal record, the Court finds that Miss Denoncourt deserves to be imprisoned for six months.

■ However, the Court feels compelled to consider also the interests and rights of Miss Denoncourt's unborn baby. The First Circuit has held that a defendant's pregnancy is not a proper ground to justify a downward departure. *United States v. Pozzy*, 902 F.2d 133, 139 (1st Cir.1990) ("But it has been recognized since time immemorial that the sins of parents are visited upon their children."). However, this Court is sentencing Ms. Denoncourt within the guideline range. Moreover, this Court finds that Miss Denoncourt's prior history of drug abuse and prostitution constitute an extraordinary physical impairment which might endanger her unborn child. This would be a ground for departure under Guideline Section 5H1.4. In considering the interest of her unborn child, the Court is particularly concerned that Miss Denoncourt may revert to abusing drugs or engaging in prostitution prior to giving birth to her child, with the resulting serious impact upon her child. The Court finds that the statement given by Miss Denoncourt to the INS, even after being corrected by her, indicates that Miss Denoncourt continued to engage in prostitution after she knew she was pregnant. Finally, contrary to the *Pozzy* Court, this Court feels that, in sentencing, the rights and interests of the unborn baby should be considered along with those of his or her mother.

Ms. Denoncourt is in the third trimester of pregnancy. The projected delivery date is November 13, 1990. Accordingly, the

Court finds that Miss Denoncourt's unborn baby is viable under *Roe v. Wade*, 410 U.S. 113, 163, 93 S.Ct. 705, 731–32, 35 L.Ed.2d 147 (1973), and "presumably has the capability of meaningful life outside the mother's womb." *Id.* See also *The City of Akron v. Akron Center for Reprod. Health*, 462 U.S. 416, 457–458, 103 S.Ct. 2481, 2506–07, 76 L.Ed.2d 687 (1983) ("However, recent studies have demonstrated increasingly earlier fetal viability. . . . As medical science becomes better able to provide for the separate existence of the fetus, the point of viability is moved further back toward conception.") (O'Conner, dissenting.)

The Hawaii Legislative Committee Reports for Hawaii Revised Statute § 453–16, define human life, together with entitlement to all rights of human beings, as beginning at viability and viability as occurring when the fetus can exist individually outside of the mother's womb. House Journal—Conference Committee Reports at 1215 (1970); Senate Journal—Stand. Com. Reports at 1029–30 (1970) ("The right of the unborn child is therefore predicated on the more important question of whether a fetus is a human being and therefore entitled to all rights of human beings. From the standpoint of law, the question of human life is based on viability, that is, the law regards a fetus as a human being only at such time when such fetus can exist individually outside of the mother's womb."). Therefore, under the Hawaii Legislature Conference Committee Reports, Defendant's unborn child is vested with "all rights of human beings." *Life of the Land, Inc. v. City Council of City & County of Honolulu*, 61 Haw. 390, 446, 606 P.2d 866, 899 (1980). ("Courts may take legislative history into consideration in construing a statute.") (*citing, Kamanu v. E.E. Black, Ltd.*, 41 Haw. 442 (1956); *In re Island Airlines*, 47 Haw. 87, 384 P.2d 536 (1963)).

In *William L. Webster v. Reproductive Health Services*, 492 U.S. 490, 109 S.Ct. 3040, 3057, 106 L.Ed.2d 410 (1989) the Supreme Court ruled that:

In the second place, we do not see why the State's interest in protecting potential human life should come into existence only at the point of viability, and that there should therefore be a rigid line allowing State regulation after viability but prohibiting it before viability. The dissenters in *Thornburgh v. American College of Obstetricians and Gynecologists*, 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779, writing in the contents of the *Roe* trimester analysis, would have recognized this fact by positing against the "fundamental right" recognized in *Roe* the State's "compelling interest" in protecting potential human life throughout pregnancy. "[T]he State's interest, if compelling after viability, is equally compelling before viability." (citations omitted)

More recently, the Tennessee Appellate Court recognized that "the foundations of the Tennessee common law are based upon Blackstone's observation: 'life' begins in contemplation of the law as soon as an infant is able to stir in the mother's womb"; however, the Court noted that "other enactments by the Legislature demonstrate even more explicitly that viable fetuses in the womb are not entitled to the same protection as 'persons'." *Davis v. Davis*, 1990 W.L. 130807 (Tenn.App.). Thus the Tennessee Legislature has taken a different course than the Hawaii Legislature with respect to recognizing that a viable unborn baby is entitled to all rights of human beings.

Accordingly, the Court concludes that while Miss Denoncourt deserves imprisonment, the Court does not feel that prison is a suitable or desirable setting for her unborn baby. Therefore, in considering the interests and rights of her unborn baby, the Court will sentence Miss Denoncourt at the low end of the guideline range, and impose a sentence of one year of probation pursuant to 18 U.S.C. § 3561(b)(1), under the following special conditions:

1. Because of the Court's concern that she might revert to drug abuse and/or prostitution, as well as the Court's concern for adequate medical treatment for Miss Denoncourt and her unborn baby, Miss Denoncourt is to be placed at the half-way house known as Miller Hale for a period of six months, on twenty-four hour restric-

tion, and to be escorted to and from medical appointments by Miller Hale staff. Miss Denoncourt will receive credit for time already served.

The Court personally visited the facilities at Miller Hale to ensure their adequacy for Miss Denoncourt and her unborn child. Adequate medical treatment shall be provided by the Federal Government at Kapiolani Hospital and other places approved by the probation office.

The Court had considered placing Miss Denoncourt on probation and permitting her to return home to Canada in time to give birth there. However, Miss Denoncourt would face prosecution on charges for prostitution in Canada, with the possibility of being imprisoned prior to giving birth to her child. The Court is further concerned about the adequacy of medical treatment Miss Denoncourt and her baby would receive in Canada. Additionally, there would be the danger she would revert to drug abuse and/or prostitution. Finally, the Court has no means of enforcing conditions of probation in Canada.

2. Miss Denoncourt shall participate in such drug treatment and testing as prescribed by the probation office to ensure that she will be in the best possible physical condition for her baby.

3. After deportation Miss Denoncourt is not to reenter the United States without first obtaining permission of the Attorney General of the United States.

4. Miss Denoncourt shall also be subject to the standard conditions of probation.

The Court will monitor Miss Denoncourt's situation with INS and her ultimate deportation by INS to ensure that it is handled in the best possible way for her child, and the Court will endeavor to effectuate deportation as soon as feasible after the birth of her child.

No fine shall be imposed because Miss Denoncourt has no available assets and earnings from any employment will be needed to support herself and her baby.

Finally, the Court ORDERS that Miss Denoncourt pay a special assessment of $50.00.

IT IS SO ORDERED.