**UNITED STATES of America, Plaintiff,**

v.

**Harold HAMMOND, Defendant.**

**No. CR98–51 (JBW).**

United States District Court, E.D. New York.

Feb. 18, 1999.

Kenneth A. Paul, New York, NY, Steven M. Bernstein, Steven M. Bernstein, New York, NY, Linda Fraser, New York, NY, for Clyde D. Gravesande.

Peter J. Fabricant, New York, NY, Ellyn I. Bank, Law Office of Ellyn I. Bank, New York, NY, for Forrest Pollard.

B. Alan Seidler, Nyack, NY, Michael P. Padden, The Legal Aid Society, Federal Defender Division, Brooklyn, NY, for Harold Hammond.

Linda A. Lacewell, United States Attorney's Office, Criminal Division, Brooklyn, NY, for U.S.

## MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

### I. INTRODUCTION

Harold Hammond pled guilty to conspiring with an informer to buy 15 grams of cocaine. 21 U.S.C. § 846. His offense level was determined by the Probation Department to be 29 points, with a Criminal History Category of VI, mandating a term of imprisonment of 151 to 188 months.

After adjustments required by the facts, the offense level was computed by the court as 19, Criminal History Category III, calling for 37 to 46 months imprisonment. For the reasons stated below Mr. Hammond's motion for downward departure to offense level 12, Criminal History Category III, is granted, requiring a sentence of 12 to 18 months. The term of imprisonment is set at the minimum provided by the sentencing table, 12 months.

### II. FACTS

Mr. Hammond is fifty years old. At the age of two he was abandoned by his biological father. By age ten he was addicted to cocaine. While still in their mid-teens Mr. Hammond and his high school sweetheart began to live together. Before she died of Aquired Immune Deficiency Syndrome (AIDS) they had three children: one died of Sudden Infant Death Syndrome, another died of AIDS, and one survived and has children of her own.

Mr. Hammond and his present wife have four year old twin girls and a seven year old boy. They live with two daughters from his wife's previous relationship. This family of five appears to be loving and supportive. See, for example, the recent picture taken in the Federal Detention Center, filed and docketed.

Mr. Hammond has continued to work, file income taxes, and emotionally and financially help to support his wife and their five children. He has earned an Associate's degree from Mercy College.

Mr. Hammond's wife attends New York Technical College and works part-time. Her earnings have not been sufficient to provide for the family while her husband has been incarcerated awaiting sentencing. Since his jailing thirteen months ago, her financial hardships have been severe. The children have become disruptive and difficult to control.

There is no history of violent behavior by Mr. Hammond. His prior arrests resulted from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics. Unlike more affluent people with a cocaine habit, Mr. Hammond's relatively menial employment could not support both his drug dependency and his family. *Cf.* William J. Stuntz, *Race, Class, and Drugs*, 98 Colum.L.Rev. 1795, 1813 (1998) ("[A] significant number of customers are . . . vastly higher on the socioeconomic ladder than those from whom they buy. Since . . . sellers are much more likely to be arrested and imprisoned than buyers, this point aggravates the . . . tendenc[y] toward . . . greater exposure to criminal punishment for those from downscale communities . . . .").

With varying degrees of success Mr. Hammond has attempted to overcome his addiction. Twice he has been a counselor in drug rehabilitation groups. In 1989 he was a Group Home Supervisor for the Astor Child Care Agency earning $10 an hour. In 1988 he was a Primary Substance Abuse Counselor for the National Recovery Institute in New York earning $11 an hour. Like many other addicts struggling to avoid narcotics, he has repeatedly relapsed into the drug culture. *Cf. Studies Show that Drug Courts, Forced Rehabilitation Reduce Drug Use and Re-arrest Rates*, News Briefs (National Drug Strategy Network, Washington, D.C.), Nov.–Dec.1998, at 17.

Mr. Hammond is now suffering from advanced human immunodeficiency virus (HIV), which precedes "full-blown" AIDS. *See* Darrell E. Ward, M.S., *Introduction by Mathilde Krim, The Amfar AIDS Handbook* 59–60 (1999); Reid J. Schar, *Downward Sentencing Departures for HIV–Infected Defendants: Analysis of Current Law and a Framework for the Future,* 91 Nw.U.L.Rev. 1147, 1155 (1997). Present symptoms include migraine headaches, fatigue, loss of memory, and kidney problems. To be expected in the normal progression of the disease are loss of bowel control, confusion, and inability to speak. Darrell E. Ward, M.S., *Introduction by Mathilde Krim, The Amfar AIDS Handbook* 61–62 (1999). At this stage Mr. Hammond is susceptible to opportunistic infections and cancers such as: Kaposi's sarcoma (blood vessel tumor); HIV-related dementia; kidney failure; hepatitis; and tuberculosis. Reid J. Schar, *Downward Sentencing Departures for HIV–Infected Defendants: Analysis of Current Law and a Framework for the Future,* 91 Nw.U.L.Rev. 1147, 1154 (1997); Darrell E. Ward, M.S., *Introduction by Mathilde Krim, The Amfar AIDS Handbook* 122–173 (1999). Advanced HIV is severely debilitating, requiring significant medical attention. Once AIDS develops the average life expectancy is approximately eighteen months. Stacey M Studnicki, *Individualized Sentencing: Federal Sentencing Departures Based Upon Physical Condition,* 1994 Det.C.L.Rev. 1215, 1227–28; *cf. Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2203, 141 L.Ed.2d 540 (1998) (HIV is a "disability" which "substantially limits" major life activity within meaning of the Americans with Disabilities Act).

Over the course of the last thirteen months Mr. Hammond has resisted taking the "cocktail" of treatment drugs required to inhibit the development of AIDS because, as he puts it, once it becomes known that a prisoner has HIV he will immediately be stigmatized and "ostracized by the other inmates." See Scott Burris Law and the Social Risk of Health Care: Lessons from HIV Testing, 61 Alb. L. Rev. 831, 832 (1998)("It is accepted ... that social risk can deter people with, or at risk of threating conditions from seeking care ....")

In addition to Mr. Hammond's numerous HIV–AIDS medical problems he is being treated for depression. A medical report indicates, however, that he is capable of pleading and being sentenced.

### A. Offense

Mr. Hammond has pled guilty to conspiring with a confidential informant to help buy 15 grams of cocaine base using $600 that the government supplied to the informant. For this assignment Mr. Hammond was to receive $50. After making the contact for the informant, Mr. Hammond demurred when asked to be present at the time the purchase was to be made. On his government controller's advice, the informant insisted on Mr. Hammond's being present at the sale. Only 13 grams actually changed hands.

Mr. Hammond claims to have become involved only because he was "struggling to make ends meet."

### III. *SENTENCING COMPUTATION*

The Sentencing Act requires a district court to impose a sentence within the applicable Guideline range, if it finds the case to be "typical." *See* 18 U.S.C. § 3553(a). A "sentencing court dealing with an 'atypical' case need ... not be rigidly constrained by the proscriptions of the Guidelines." *United States v. Bryson,* 163 F.3d 742, 746 (2d Cir.1998). The sentencing directives authorize the judiciary to impose a sentence sufficient, but not greater than necessary, to comply with the purpose of sentencing. *See* 18 U.S.C. § 3553(a) (1994); *see also* U.S.C. § 3553(a)(2)(A–D). Section 5K2.0 of the Federal Sentencing Guidelines allows departure from a guideline range if the district court finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines...." 18 U.S.C. § 3553(b).

The base offense level for 5 to 20 grams of cocaine base is 26. It was the Probation Department's view that no adjustment for Mr. Hammond's role in the offense was warranted since "the drug transaction would not have occurred without the defendant's presence." The court agrees with the prosecution's view that Mr. Hammond's role in the offense was minimal and thus warrants a four-point credit.

■ According to the Probation Department, Mr. Hammond should be classified as a career criminal in view of his many offenses over the years, leading to a Criminal History Category of VI. In contrast, the prosecution and the court are in agreement that the Criminal History Category of VI for 13 or more Criminal History Points seriously overstates Mr. Hammond's criminal history. *See United States v. Rivers,* 50 F.3d 1126, 1131 (2d Cir.1995) ("likelihood of recidivism much lower than that of the typical career offender"); *United States v. Rogers,* 972 F.2d 489, 494 (2d Cir.1992). A horizontal reduction to Category III is appropriate. Additionally, the Probation Department and the United States Attorney agree that Mr. Hammond is entitled to a 3 level downward adjustment for acceptance of responsibility.

Without the upward adjustment of his offense level because of a career criminal status finding, and with other modifications, Mr. Hammond's applicable offense level is 19 rather than the 29 originally assigned by the Probation Department. Under the Sentencing Guidelines, Level 19, Category III, calls for a range of imprisonment of 37 to 46 months.

## IV. *BASES FOR DOWNWARD DE-PARTURE*

Congress established the Federal Sentencing Guidelines in part to eliminate "unwarranted sentencing disparities among [similarly situated] defendants." 28 U.S.C. § 991(b)(1)(B). It authorized the district courts to use discretion when confronted with a case containing extraordinary facts and circumstances that distinguish it from the "heartland" of cases that the guidelines describe. U.S.S.G. § 1B1.1.

> The legislative history [of the Federal Sentencing Guidelines] reflects that it was not Congress' aim to straightjacket a sentencing court, compelling it to impose sentences like a robot inside a Guidelines' glass bubble, and preventing it from exercising discretion, flexibility or independent judgment.

*United States v. Lara,* 905 F.2d 599, 604 (2d Cir.1990).

■ In a motion for a downward departure the defendant must show by a preponderance of the evidence that a departure is warranted. Mr. Hammond has met this burden. He has proved that several factors, independently and together, support his motion.

■ First, Mr. Hammond's extraordinary relationship with his young children and his wife's need for assistance in supporting and controlling them suggest the need for a downward departure. *See, e.g., United States v. Sprei,* 145 F.3d 528, 535 (2d Cir.1998) ("departures [are warranted] based on family circumstances where the family was uniquely dependant on the defendant's ability to maintain existing financial and emotional commitments"); *United States v. Johnson,* 964 F.2d 124, 131 (2d Cir.1992) (approving a 13–level downward departure for a defendant who was responsible for raising four young children ranging in ages from five months to six years); Karen R. Smith, *United States v. Johnson: The Second Circuit Overcomes the Sentencing Guidelines' Myopic View of "Not Ordinarily Relevant" Family Responsibilities of the Criminal Offender,* 59 Brook. L.Rev. 573 (1993). A sentence without a downward departure would contribute to the needless suffering of young, innocent children. *See, e.g., United States v. Chambers,* 885 F.Supp. 12, 14 (D.D.C.1995).

Second, Mr. Hammond's medical status would make service of a long sentence exceptionally onerous. An important fac-

tor in determining the adequacy of a sentence is Mr. Hammond's health. In one of its memoranda to the court, the Probation Department indicated that it would have suggested a downward departure for Mr. Hammond on the basis of his HIV but for its doubts about the propriety of such a departure. It wrote:

> Based on the nature of the defendant's medical condition, the Probation Department has considered suggesting a downward departure under Policy Statement 5H1.4. However, we can find no case law supporting such a departure.... [A] survey of federal probation officers in the Second Circuit indicates that many are in favor of downward departure in cases of serious physical impairment, such as HIV or AIDS.

Memorandum dated August 25, 1998.

HIV is widespread in prisons. Without proper treatment Mr. Hammond's symptoms will rapidly progress into obvious and terminal AIDS. *See, e.g.*, Reid J. Schar *Downward Sentencing Departures for HIV–Infected Defendants: An Analysis of Current Law and a Framework for the Future*, 91 Nw.U.L.Rev. 1147, 1186 (1997) (the threat of airborne diseases to the weakened immune systems of HIV-infected prisoners is particularly acute, given the poor sanitation and ventilation of most prisons); *Treatment Issues*, Newsletter (Gay Men's Health Crisis, New York, N.Y.) (June, 1997) (AIDS Medical Glossary); Laura Maruschak, *U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics*, (last modified Aug. 1997) <http://www.ncjrs.org/txtfiles/164260.txt> (HIV in Prisons and Jails); Theodore M. Hammett, *Public Health/Corrections Collaborations: Prevention and Treatment of HIV/AIDS, STDs and TB*, (July 1998) <http://www.ncjrs.org/txtfiles/169590.txt>; *cf. Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2203–203, 141 L.Ed.2d 540 (1998) (severity of HIV disease).

Mr. Hammond's incarceration will be far more difficult because his HIV status will probably lead the Bureau of Prisons to remove him from the general population and place him in some form of protective custody. *See Cordero v. Coughlin*, 607 F.Supp. 9, 10 (S.D.N.Y.1984) (segregation of HIV-infected inmates from the general population is constitutionally permissible to protect both sufferers and other prisoners from tensions and harm which could result from other prisoners' fears). This action would cause Mr. Hammond to serve his full term in restricted confinement, a penalty far more difficult to endure than customary incarceration. *See United States v. Blarek*, 7 F.Supp.2d 192, 211 (E.D.N.Y.), *aff'd*, 166 F.3d 1202, 1998 WL 907429 (2d Cir.1998) (removal from general population because of AIDS would make a sentence more difficult to endure).

The Sentencing Commission considers an "extraordinary physical impairment" a legitimate reason for imposing a sentence below the applicable guideline range. U.S.S.G. Manual § 5H1.4 (1994). The Commission has failed to indicate which illnesses or physical burdens qualify for a downward departure. There is a great variety of physical conditions that courts have deemed to be so extraordinary as to warrant sentencing departures. The distinction appears to be somewhat arbitrary, anchored in a court's experience rather than in fully articulable criteria.

Some of the disabilities warranting a downward departure have been: degenerative hip and knee condition with nonactive tuberculosis and Hyperactive Adjustment Disorder, *United States v. Boy*, 19 F.3d 30, (unpublished opinion), 1994 WL 59781, at *3 (9th Cir.1994); amyotrophic lateral sclerosis (Lou Gehrig's Disease), *United States v. Roth*, 1995 WL 35676, at *1 (S.D.N.Y. Jan.30, 1995); liver cancer, *United States v. Maltese*, 1993 WL 222350, at *11 (N.D.Ill. June 22, 1993); kidney cancer, *United States v. Basey*, 67 F.3d 303 (unpublished opinion), 1995 WL 567356, at *1 (8th Cir.1995); a polio-crippled leg, *United States v. McClean*, 822 F.Supp. 961, 962 (E.D.N.Y.1993); a double amputation below the knee due to war

wounds, *United States v. Greenwood,* 928 F.2d 645, 646 (4th Cir.1991); and pregnancy, *United States v. Denoncourt,* 751 F.Supp. 168 (D.Haw.1990). *See also* Reid J. Schar, *Downward Sentencing Departures for HIV–Infected Defendants: An Analysis of Current Law and a Framework for the Future,* 91 Nw.U.L.Rev. 1147, 1163–64 (1997).

Among the ailments that courts have decided do not warrant a downward departure have been: diabetes, *United States v. Fischl,* 16 F.3d 927, 929 (8th Cir.1994); epilepsy, *United States v. Gallego,* 980 F.2d 721 (per curiam) (unpublished decision), 1992 WL 366059, at *1 (1st Cir. Dec.14, 1992); throat cancer, *United States v. Bovee,* 37 F.3d 1503 (unpublished opinion), 1994 WL 560807, at *1 (8th Cir. Oct.14, 1994); legal blindness, *United States v. Martinez–Guerrero,* 987 F.2d 618, 621 (9th Cir.1993); and cancer in remission, together with a fused ankle, high blood pressure, drug dependence, and an amputated leg, *United States v. Guajardo,* 950 F.2d 203, 208 (5th Cir.1991).

Courts thus far have reached different conclusions on whether HIV–AIDS is an "extraordinary impairment," and, if it is, to what extent it warrants a downward departure. *See, e.g., United States v. De-Pew,* 751 F.Supp. 1195, 1199 (E.D.Va.1990) (denied as to AIDS infection), *aff'd. on other grounds,* 932 F.2d 324 (4th Cir.), *cert. denied,* 502 U.S. 873, 112 S.Ct. 210, 116 L.Ed.2d 169 (1991); *United States v. Thomas,* 49 F.3d 253, 261 (6th Cir.1994) (HIV must have progressed into advanced AIDS); *United States v. Woody,* 55 F.3d 1257, 1275–76 (7th Cir.), *cert. denied,* 516 U.S. 889, 116 S.Ct. 234, 133 L.Ed.2d 163 (1995) (departure denied as to HIV, with an indication that a "sound factual foundation" might have warranted a departure); *United States v. Schein,* 31 F.3d 135, 138 (3d Cir.1994) (HIV "may" be sufficient, but 5H1.4 departure was not applicable to a defendant subject to a statutory mandatory minimum).

Other prison inmates often fear that HIV can spread. *See* Reid J. Schar, *Downward Sentencing Departures for HIV–Infected Defendants: An Analysis of Current Law and a Framework for the Future,* 91 Nw.U.L.Rev. 1147, 1187 (1997). This perception can add to the discomfort of a sufferer of HIV–AIDS. Moreover, AIDS and HIV can increase susceptibility to a wide range of other life-threatening diseases. James C. MacGillis, *The Dilemma of Disparity: Applying the Federal Sentencing Guidelines to Downward Departures Based on HIV Infection,* 81 Minn.L.Rev. 229, 249 (1996). Courts are obligated to consider these special HIV–AIDS factors. *See* U.S.S.G. Manual Ch. 1, Pt. A § 4(b) (hope for an evolving sentencing guideline system based on continuing study of court sentencing practices).

Second Circuit courts have been amenable to granting downward departures to inmates with advanced HIV and AIDS. For example, in *United States v. Acevedo,* 159 F.3d 1348 (unpublished opinion), 1998 WL 613581, at *3 (2d Cir.1998), the court of appeals approved a downward departure based upon defendant's "severe medical condition of AIDS." In *United States v. Blarek,* 7 F.Supp.2d 192 (E.D.N.Y.), aff'd, 166 F.3d 1202, 1998 WL 907429 (2d Cir.1998), a downward departure was granted to a defendant with AIDS because, "[d]espite federal authorities' concern for prisoners' welfare, incarceration is likely to be detrimental to this defendant's health, resulting in a lessening of his present life expectancy." *Id.* at 213. My own informal survey of other judges in this district indicates other unreported cases with downward departures based upon either HIV or AIDS.

Special circumstances in each case must be evaluated in determining the effect of HIV–AIDS on a defendant. *See Koon v.*

*United States,* 518 U.S. 81, 94, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996); *United States v. Hilton,* 946 F.2d 955, 958 (1st Cir.1991). There is a delicate balance between the seriousness of the crime and the need to punish and the special facts and circumstances of Mr. Hammond's background, his medical condition, the enervating effects of prolonged incarceration, the recommendation of the Probation Department, and the need of his family for his presence in the house. Mr. Hammond's HIV and other mitigating circumstances warrant a downward departure.

The motion for downward departure is appropriate under section 5K2.0. Level 12, category III, is required in light of the extraordinary circumstances of this case. The sentence should be at the lower end of the 12 to 18 month range.

## CONCLUSION

Mr. Hammond is sentenced to 13 months, a $100 assessment and five years of supervised release. Since he has already been incarcerated for 13 months while awaiting disposition of his case, he shall be released forthwith.

The conditions of supervised release are as follows:

1. Mr. Hammond is to participate in an intensive drug treatment program and remain drug free.

2. Mr. Hammond is to participate in an intensive psychiatric treatment program.

3. Mr. Hammond is to participate in an intensive HIV treatment program.

4. Mr. Hammond is to remain fully employed and support his family to the

extent he can. The Probation Department shall assist Mr. Hammond in obtaining suitable employment.

SO ORDERED.