**UNITED STATES of America, Plaintiff,**

v.

**Michelle RISSO, Defendant.**

**No.  02–CR–184.**

United States District Court, E.D. Wisconsin.

Aug. 28, 2003.

---

**2.** I have amended the caption to reflect the dismissal of Quad/Graphics and John Does 1– 4 as defendants.

Carol L. Kraft, for Plaintiff or Petitioner.

Joan M. Boyd, for Defendant or Respondent.

### MEMORANDUM

ADELMAN, District Judge.

Defendant Michelle Risso pled guilty to a charge of possession with intent to distribute and distribution of 25 to 50 grams of cocaine. A pre-sentence report (PSR) was prepared, which calculated her offense level as 12 and her criminal history category as IV under the sentencing guidelines. The parties agreed with the PSR's calculations, but defendant moved for a downward departure from her criminal history category pursuant to U.S.S.G. § 4A1.3. I granted the motion, and in this memorandum, I explain why.

### I.

Under the guidelines, the defendant's sentence is determined based on two calculations: her offense level and her criminal history. Chapter four of the guidelines manual addresses the latter determination. Under U.S.S.G. § 4A1.1, the defendant receives three criminal history points for sentences of imprisonment exceeding one year and one month, two points for sentences of at least sixty days, and one point for other sentences. She may receive additional points if she committed the instant offense while under a criminal justice sentence or less than two years after release from any sentence of sixty days or more. U.S.S.G. § 4A1.1 (d) & (e).

As the commentators have noted, this approach is problematic. The most obvious problem is that it determines the defendant's criminal history category based solely on the *length* of the prior sentence rather than the *nature* of the prior criminal conduct. Spencer Freedman, *In Defense of Criminal History Departures*, 13 Fed. Sen. Rptr. 311, 312 (May/June 2001). This in turn subjects the defendant's federal sentence to the vagaries of state sentencing practices, which would seem to be contrary to the guidelines overarching goal of achieving reasonable uniformity in federal sentences. It also omits consideration of factors traditionally considered by judges at sentencing, such as the circumstances of the defendant's life at the time she committed the prior offense(s).

No doubt aware of these problems, the Commission has acknowledged "that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur." U.S.S.G. § 4A1.3 cmt. background. Therefore, the Commission provided specific authority for courts to depart whenever the category computed under the guidelines' mathematical approach fails to properly account for the seriousness of the defendant's past misdeeds or the likelihood that she will repeat them.[1]

---

1. In the recently enacted "Feeney Amendment," Congress instructed the Commission to "substantially reduce" the number of downward departures. Given that the guidelines are hardly replete with invitations for judges to depart, it is unclear how the Commission will meet this goal except by banning the few types of departures specifically authorized. (Perhaps the Commission will start banning frequently used "unmentioned" bases for departure, but Congress itself declined to take that step except in cases affecting children.) It appears that § 4A1.3 is one of the provisions being considered for change. Jonathan Groner, "Panel Caught In Tussle Over Judges' Power," *Legal Times*, August 18, 2003, at 8. In light of the Commission's previous admission that the criminal history score

Section 4A1.3 of the guidelines provides:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. . . .
>
> . . .
>
> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.

Thus, under § 4A1.3, the court is able to consider the nature of the prior offenses and the circumstances under which they were committed, to, in effect, "put the defendant's record in the context of [her] life and background." *United States v. Wilkerson*, 183 F.Supp.2d 373, 380 (D.Mass.2002).

■ Of course, every case and every defendant is unique. However, given the purposes of chapter 4—to provide just deserts to those who continue to commit crimes and to protect the public from re-

cidivists—several factors will often be relevant in deciding a § 4A1.3 motion. The presence of these factors will provide an indication that the defendant's past is not so depraved as the guidelines depict and her future not so dubious as the guidelines predict.

First, the court should consider whether the prior offenses were committed while the defendant was under the influence of drugs or alcohol and whether the defendant has taken steps to deal with her substance abuse issues. If she has, the likelihood of recidivism is much lower. *See United States v. Lacy*, 99 F.Supp.2d 108, 119 (D.Mass.2000), *aff'd*, 16 Fed. Appx. 10 (1st Cir.2001) (departing where defendant's record was "largely non-violent, and relatively minor, the kind that characterizes an out-of-control addict"); *United States v. Hammond*, 37 F.Supp.2d 204, 205 (E.D.N.Y.1999) (departing from category VI to III where defendant's "prior arrests resulted from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics"); *see also United States v. Abbott*, 30 F.3d 71, 72–73 (7th Cir.1994) (remanding for consideration of § 4A1.3 departure where defendant argued that priors were "petty crimes related to his substance abuse addictions"); *United States v. Fletcher*, 15 F.3d 553, 557 (6th Cir.1994) (noting defendant's attempts to deal with his alcohol problems in context of § 4A1.3 departure), *overruled on other grounds as stated in United States v. Jones*, 107 F.3d 1147 (6th Cir.1997).

Second, the court should consider whether the inclusion of minor, non-violent offenses results in a distortion of the de-

---

computed under the guidelines "is *unlikely* to take into account all the variations in the seriousness of criminal history that may occur," U.S.S.G. § 4A1.3 cmt. background (em-

phasis added), one would hope that the Commission would resist the temptation to repeal or restrict judges' ability to depart on this basis.

fendant's criminal history category. *See United States v. Mishoe,* 241 F.3d 214, 219 (2d Cir.2001) (stating that sentencing court could consider the circumstances of the prior offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by the guidelines); *United States v. Spencer,* 25 F.3d 1105, 1113 (D.C.Cir.1994) (remanding for consideration of § 4A1.3 departure based on "relatively minor nature" of prior offenses); *Fletcher,* 15 F.3d at 557 (affirming departure based in part on type of prior convictions); *Wilkerson,* 183 F.Supp.2d at 381 (departing where defendant had no convictions for crimes of violence but mostly drug and motor vehicle offenses); *United States v. Wilkes,* 130 F.Supp.2d 222, 239–40 (D.Mass.2001) (departing to category I where defendant had only "two convictions for minor drug offenses" yet was placed in category III); *United States v. Leviner,* 31 F.Supp.2d 23, 32–34 (D.Mass.1998) (departing where defendant's priors where minor, mostly motor vehicle and possession charges, and non-violent); *United States v. Stevenson,* 829 F.Supp. 99, 100 (S.D.N.Y.1993) (stating that where defendant's convictions arise from personal drug use a departure may be warranted).

Finally, the court may consider whether the prior offenses were part of a single deviation from an otherwise law abiding life. If the defendant has demonstrated the ability to follow the law for significant periods of time, a criminal history category elevated by multiple offenses committed within a relatively short period of time— particularly where the defendant was then battling drug addiction—may overstate the seriousness of her record or the likelihood of recidivism. *See generally United States v. Shoupe,* 988 F.2d 440, 447 (3d Cir.1993).

## II.

■ Defendant Risso's criminal history consisted of three misdemeanor offenses. The first conviction, for theft by false representation, occurred on November 2, 1999. According to the criminal complaint, defendant took two checks from a friend, made them out to herself, and cashed them. She was sentenced to two years probation and four months and fourteen days in jail.[2] The sentence counted for two criminal history points under the guidelines.

Defendant's second conviction, for possession of cocaine, occurred on May 11, 2001 and resulted in a sentence of two years probation. Her probation was later revoked and she was sentenced to 57 days in jail. The conviction counted for one criminal history point.

Defendant's third and final conviction, for obtaining a prescription by fraud, occurred on November 19, 2002. According to the complaint, defendant added Vicodan to a legitimate prescription for an antibiotic written by her doctor. Defendant was sentenced to one year probation. This conviction also counted for one criminal history point.

Thus, defendant had four points based on her prior offenses, which would have placed her at the bottom of criminal history category III.[3] However, because she committed part of the instant offense while on probation for the possession of cocaine offense,[4] two more points were added pursuant to § 4A1.1(d). And, because she

---

2. This was apparently a time served disposition.

3. Category III is for those offenders with 4–6 points.

4. The instant offense occurred between March 1, 2002 and July 2, 2002. Defendant was on probation for the possession of cocaine offense from May 11, 2001 to August 1, 2002.

had been released from her prison sentence on the theft case within two years of her commencement of the instant offense, another point was added under § 4A1.1(e).[5] Therefore, her final criminal history score was 7, resulting in a category of IV.

This category significantly over-represented the seriousness of defendant's criminal history and the likelihood of recidivism. All of defendant's prior offenses were non-violent and consistent with her admitted history of drug abuse and addiction. The theft seemed to be an attempt to obtain funds to procure drugs; the possession of cocaine and fraud to obtain a prescription cases were directly related to her drug habit. None of these offenses posed a risk of injury to others, and they all occurred within a relatively short period of time, during which defendant had succumbed to her addiction.

However, following her arrest on this offense, defendant demonstrated a strong desire to turn her life around. Defendant followed all of the conditions set by the court and made great strides in overcoming her addiction. Defendant was released from federal custody to a program called "Teen Challenge" in Lansing, Michigan and fully complied with the terms of that program. Earlier this year, defendant gave birth to her third child. She participated in all of the programming and assistance offered to her by Teen Challenge in improving her parenting skills. She reconnected with her family, from whom she had been estranged. Finally, all of her drug screens were negative.

Under these circumstances, category IV significantly over-represented the seriousness of defendant's criminal history and the likelihood that she will commit further crimes. Most defendants in category IV have committed far more serious and harmful offenses than this defendant. Further, so long as she maintains sobriety, it seems unlikely (or at least substantially less likely) that she will re-offend. Therefore, a departure was appropriate. I departed from category IV to category III and sentenced defendant accordingly.

### III.

**THEREFORE,** for the reasons stated, defendant's motion for a downward departure was **GRANTED.**

---

**5.** Defendant was released from jail on the theft case on July 15, 2000, less than two years from the commencement of this offense on March 1, 2002. The PSR also included the possession of cocaine offense as a basis for the § 4A1.1(e) enhancement. However, defendant was released from custody on the possession sentence on September 3, 2002, after completion of the instant offense. Moreover, only sentences counted under § 4A1.1(a) & (b), i.e. those of 60 days or more in length, may serve as a basis for this enhancement. Defendant's sentence on the possession case was only 57 days. Thus, it was not a proper basis for the § 4A1.1(e) enhancement.