# United States Court of Appeals
## For the First Circuit

No. 00-1086

UNITED STATES OF AMERICA,

Appellant,

v.

JOHN LARKIN THOMPSON, a/k/a MOMO,

Defendant, Appellee.

CRIMINAL JUSTICE ACT BOARD,

Intervenor.

NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS,

Intervenor.

[Hon. Nancy Gertner, U.S. District Judge]

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Before

Torruella, Chief Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

Adam J. Bookbinder, Assistant United States Attorney, with whom, Donald K. Stern, United States Attorney, was on brief for appellant.

Joan M. Griffin, with whom Casner & Edwards, LLP, was on brief for appellee.

Charles W. Rankin, Michelle Menken, and Rankin & Sultan on brief for Criminal Justice Act Board and Lisa B. Kemler on brief for National Association of Criminal Defense Lawyers, amici curiae.

———————————

December 8, 2000

———————————

-2-

**BOWNES, <u>Senior Circuit Judge</u>.** Determining that the defendant exhibited an extraordinary family situation and employment history, the district court (Gertner, J.) departed downward from the guideline sentencing range (GSR) of 87 to 108 months of incarceration and sentenced the defendant to the mandatory minimum of 60 months in prison, followed by 48 months of supervised release. Finding that the district court erred as a matter of law when sentencing the defendant, we vacate the defendant's sentence and remand for resentencing in accordance with this opinion.

## I.

We recount the facts as stipulated in the Pre-Sentence Report (PSR): At the time of his arrest, the defendant-appellee John Thompson was a 24-year-old African-American male. He had one prior conviction and was never incarcerated.[1] He lived his

---

[1] The defendant pled guilty to sufficient facts for the assault and battery of his fiancée Breii Murray. In the PSR, it is noted that Ms. Murray advised that she started the fight and did not want to press charges. The defendant was released on probation and, according to Ms. Murray, this was the only time Thompson hit her. The record supports the conclusion that this was a unique occurrence.

In September of 1998, the police stopped the defendant's car and found in his mouth two plastic bags of crack cocaine. His older daughter was with him in the car. He was not arrested but summoned to court. Thompson denied any drug involvement and the case was, ultimately, filed without a change of plea.

entire life in the Bromley Heath Housing Development in Massachusetts. He described his childhood as "rough"; the majority of it was spent without his father, who was incarcerated much of the time. Thompson dropped out of high school in the eleventh grade when he learned that his girlfriend, Breii Murray, was pregnant with their first child. Ms. Murray and the defendant have been in a steady relationship for seven years and are engaged to be married. They have two daughters together. Ms. Murray received a Certificate in Business Administration from the Roxbury Community College but does not work so that she can spend more time with her daughters.

The PSR indicates that Thompson is a good father who spends much time with his daughters and enjoys a solid relationship with both of them, particularly Jabria, his older daughter. He supports his fiancée, their children, and his fiancée's family both economically and emotionally. Ms. Murray's mother, Jessica Gonzalez, is very supportive of the defendant and considers him to be like a son. Likewise, Ms.

His criminal record also included the following: possession with intent to distribute class D and class B controlled substances, both charges were ultimately dismissed; an arrest for drinking alcohol in a public way, which was dismissed; and possession with intent to distribute a class B substance, which was filed without a change of plea.

Murray's aunt, Ethel Ejiofor, and her grandmother, Ms. DuBois, are supportive of the defendant. In fact, the defendant resided with them while he was out on bail. They describe the defendant as a wonderful person who has made substantial contributions to the upkeep of their home by running errands and doing chores, and financial contributions of $100 per week. They consider Thompson to be a member of their immediate family. All of the women stressed that the defendant is a good man and a wonderful father, and indicated that the defendant's incarceration would detrimentally impact their lives and specifically the lives of his daughters. Letters were submitted to the court from Ms. Gonzalez and Ms. Murray that support the PSR's appraisal of Thompson's family life.

The PSR also indicates that the defendant was employed almost consistently from the time he left high school because of his fiancée's pregnancy. Thompson obtained many jobs through a local union, of which he became a member. At the time of his arrest, he was employed by M. Solberg Enterprises Corp. and earned about $2,000 per month setting planks, drilling cords and cutting concrete. His employer provided the district court with a letter in support of his bail and indicated that he was wanted back at his job and would be welcomed.

**II.**

A federal grand jury indicted the defendant on narcotics violations stemming from an investigation of crack cocaine trafficking at the Bromley Heath Housing Development. Pursuant to a plea agreement, the defendant pled guilty to one count of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1).

The district court held a sentencing hearing on August 4, 1999, and August 11, 1999. The defendant had a base offense level of 32 pursuant to the United States Sentencing Guideline (U.S.S.G.) § 2D1.1(c)(4) (1998).[2] The defendant's offense level was reduced three levels because of his acceptance of responsibility and timely plea, pursuant to U.S.S.G §§ 3E1.1(a) & (b), and he rated a criminal history category of I, pursuant to U.S.S.G. Chapter 5, Part A. The defendant, therefore, fell within the guideline range of 87 to 108 months in prison. The defendant moved for a downward departure to the mandatory

_____

[2] Section 2D1.1(c)(4) of the U.S.S.G. provides a base offense level of 32 if the offense conviction involved at least 50 grams but less than 150 grams of cocaine base. The district court noted that: "Although Thompson pleaded to one count of distribution involving 23.6 grams of cocaine base, U.S.S.G. § 1B1.3(a)(2) provides that a defendant can be held accountable for all acts that 'were part of the same course of conduct or common scheme or plan as the offense of conviction.' Therefore, in calculating Thompson's base offense level, the government used the aggregate of four sales made to undercover agents for a total of 51.8 grams."

minimum of 60 months in prison based on his extraordinary family obligations and employment history.

At the first sentencing hearing, the district court noted that "extraordinary family obligations" is a "very difficult category to meet." She continued: "I'm not going to rule at this moment, but from what I've seen, I don't think that this comes close . . . ." Then the district court continued the sentencing hearing until August 11th and invited the defendant to present more information on his family and employment.

At the second hearing, the district court heard from the defendant himself and accepted letters written on his behalf. After hearing argument from both sides, the district judge found that the defendant exhibited extraordinary family ties and responsibilities and employment history, and departed downward to the statutory minimum sentence of 60 months. The district court stated, in pertinent part:

> The guidelines permit me to depart for extraordinary family obligations. And the last time I looked at this case from one set of eyes and thought that these were really not – this didn't rise to the level of extraordinary. Since last week, I have done more work and reconsidered that.
>
> As I said before, the question of what is ordinary is nowhere defined. There's no – the Sentencing Commission doesn't tell us this is the ordinary situation. We are all guessing at what's ordinary. And in the course of making those guesses, we feed in

our stereotypes, our biases, cultural, racial, gender, etc. And I want to feed them out of it. I want to see if I can distill them out of this picture, my biases.

Where I grew up, families were intact and the kinds of things that you're describing were not unusual. The kinds of relationships that you're describing were not unusual.

In other settings in this country, the kinds of things that you're describing are unusual. And, in my experience as a judge and before that as a lawyer, it was not usual to find the kinds of profiles that you present, Mr. Thompson, of someone with intact employment, going out of his way to do the things for his children under the circumstances that you have.

\* \* \* \*

It seems to me that by any fair definition of extraordinary – that's not, by the way, as I said, the way I was raised, it's not the way others in this courtroom were raised. But certainly, in the communities that I have seen, your relationship to your children, your older daughter, is extraordinary.

\* \* \* \*

So I will – and I will write this up – I will depart to take into account your extraordinary family obligations, commitments to work, and what I believe to be an extraordinary rehabilitation,[3] as well.

---

[3] This was the last mention of "extraordinary rehabilitation." The district court departed on the sole grounds of extraordinary family obligations and employment history and that is all we discuss today.

* * * *

> I will depart, based on my findings of extraordinary family ties and responsibilities – and I will write this up – under 5H1.6, I will depart also based upon your employment record, 5H1.5. And, likewise, I will depart because of your extraordinary family obligations. And I will depart to a level 25. You're at Criminal History 1. And I will sentence you to 60 months.

Neither party objected to the sentencing. Three months later, the court issued its sentencing memorandum and judgment. In it, the court grappled with the question of how to determine if the defendant demonstrated an "extraordinary" family circumstance or employment history. It stated in pertinent part:

> What is the standard by which to judge "extraordinary" family obligations or an "extraordinary" work history? What class of defendants define "ordinary"? While the Sentencing Commission and the case law offer little guidance on the subject, one thing is clear: The baseline is not, nor should it be, "Ozzie and Harriet," the fictional two parent, two child, suburban home. In a sentencing regime whose aim is to eliminate unwarranted disparities between similarly situated offenders, "ordinary" should be determined by comparing this defendant <u>with others convicted of the same crime</u>.

> Here, I compared the defendant, who was convicted of crack cocaine sales, with <u>others convicted of the same offense</u> in my court, and indeed, throughout the District of Massachusetts. I reviewed not only my own records of previous sentences, but also presentence reports of individuals sentenced by other judges within the District.

> First, I have drawn on my own experience as a judge.  In addition, I have reviewed the presentence reports for offenders similarly situated to Thompson with respect to place (the Bromley Heath projects), time (1998), and <u>offense</u> (<u>sale of crack cocaine</u>), and more generally, I have reviewed the PSR's [sic] of <u>those convicted of crack cocaine sales</u> in this jurisdiction in 1998 and 1999.

(Emphasis added).  This may seem to make sense, but it is contrary to the law of this circuit.

In <u>United States</u> v. <u>DeMasi</u>, 40 F.3d 1306, 1324 (1st Cir. 1994), we held that when a district court contemplates a downward departure based on a discouraged factor,[4] it must compare the defendant to others who exhibit that factor, not to others who have been convicted of the same offense.  We held that the district court erred in sentencing the defendant, "by restricting the scope of its comparison to only bank robbery cases."  <u>Id.</u> at 1324.  We continued: "A court should survey those cases where the discouraged factor is present <u>without</u>

---

[4]    "Discouraged factors" are defined as factors "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range. . . . [A]lthough these factors are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range, they may be relevant to this determination in exceptional cases."  1998 U.S.S.G. ch. 5, pt. H, intro. cmt; <u>see also</u> <u>United States</u> v. <u>Koon</u>, 518 U.S. 81, 95 (1996).  Family ties and responsibilities and employment record are discouraged factors.  <u>See</u> U.S.S.G. §§ 5H1.6 (family) and 5H1.5 (employment).

<u>limiting its inquiry to cases involving the same offense</u>, and only then ask whether the defendant's record stands out from the crowd." <u>Id.</u> (emphasis added).

Here, the district court did what <u>DeMasi</u> forbids: it limited its inquiry to cases involving crack cocaine dealers and then asked whether Thompson's record stood apart from the rest. Thus, the district court erred as a matter of law.[5]

### III.

For the reason stated above, we vacate the defendant's sentence and remand for resentencing. The court may sentence the defendant within the applicable GSR or the court may sentence the defendant by comparing him to others with family responsibilities and significant employment histories, or a combination of the two, regardless of the offense of which they have been convicted. If it does so, it should provide the parties with all material not already included in the record that it intends to consider in determining the sentence and allow the parties time to object or comment before any sentence is imposed. We can defer to another day deciding whether and

---

[5] We have considered whether <u>Koon</u> has overruled <u>DeMasi</u>, as urged by the appellant and amicus, and are not persuaded by the suggestion. Whether <u>DeMasi</u> should be modified in light of subsequent developments, including case law in other circuits, is a matter not for the panel but for an <u>en banc</u> petition.

-11-

when the district court may in sentencing appropriately rely on material that is not made available to both sides.

**Vacated and remanded with instructions.**