UNITED STATES of America, Plaintiff–Appellee,

v.

Doss E. PULLEN, Defendant–Appellant.

No. 95–3790.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1996.

Decided July 10, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 16, 1996.

---

Barry Rand Elden, Chief of Appeals, Jerome Krulewitch (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Richard H. McLeese (argued), Decker & Associates, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and KANNE and EVANS, Circuit Judges.

POSNER, Chief Judge.

The defendant pleaded guilty to armed robbery of a federally insured credit union and was sentenced to 188 months in prison. The appeal, which challenges primarily the judge's refusal to grant him a downward departure from his sentence on the basis of his having been sexually and otherwise abused as a small child, and later as an adolescent, by his father, presents difficult and fundamental questions in the wake of *Koon v. United States,* —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

■ The defendant's father was a drunkard and a gambler. He beat his wife and children and threatened them with guns and knives. When the defendant was five years old, his father abused him sexually over a period of several months. His parents divorced and the defendant lived with his mother, but when he was 15, and drinking, smoking marijuana, and having scrapes with the law, his mother could no longer control him and the juvenile court sent him to live with his father. The two would go out drinking together and once after a bout of drinking his father raped him. He ran away. His troubles with the law escalated. At the age of nineteen he committed his first bank robbery. He committed his second at the age of twenty-three. A year after he was released from prison, where he was serving a sentence for the second robbery, he robbed the credit union. A psychologist evaluated the defendant and concluded that as a result of the history of abuse that we have sketched the defendant "has a need to punish himself, hence his illegal acts and the relative ease with which he is caught." The psychologist also found that the defendant suffers from "schizoid disorder" and "borderline personality disorder," and that these conditions, too, are both "clinically linked to the history of abusive treatment by his father" and caus-

ative of his criminal activity because they "reduce·impulse and behavioral controls" and impair "his ability to think and act clearly." The district judge concluded that he lacked authority to base a downward departure on the history and evaluation that we have summarized.

■ The Sentencing Reform Act authorizes sentencing below the guidelines if the judge finds a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). When the appeal in this case was argued, the parties and we assumed that a departure from the guidelines range, in order to be allowable, must be consistent with the statutory sentencing goals, which are deterrence, incapacitation, retribution, and correction. 18 U.S.C. § 3553(a)(2). The Supreme Court has since rejected this limitation on sentencing discretion. *Koon v. United States, supra*, —— U.S. at —— – ——, 116 S.Ct. at —— – ——. But we take it that consistency with one or more of those goals remains a reason in favor of a departure, and let us consider whether it is present here.

The statute does not use the word "retribution," but the reference to "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), has been understood to mean retribution. *Mistretta v. United States*, 488 U.S. 361, 367, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989); *United States v. Mason*, 966 F.2d 1488, 1494 (D.C.Cir.1992); cf. *United States v. Heffernan*, 43 F.3d 1144, 1148 (7th Cir.1994). ("Retribution" has rather a grim, premodern sound, which may be why the Sentencing Reform Act avoids the word, though not the concept.) The defendant argues not that his history of childhood abuse by his father warrants a reduction in sentence the better to serve the goals of deterrence, incapacitation, or correction—indeed it could well be argued that the lack of self-control that the psychologist attributes to his history would make an even longer sentence necessary to serve the first two of these goals—but that the history

shows that a shorter sentence would be more apt to the retributive goal of punishment.

■ The obvious objection to this argument and the one emphasized by the government is that the framers of the guidelines appear *not* to have failed to take adequate account of the bearing of a history of childhood abuse that results in a diminished capacity to comply with the law. If this is right, the judge indeed lacked authority to depart. Section 5H1.3 (policy statement) of the guidelines provides that "mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, except as provided in" subpart 5K2 of the guidelines. In the word "ordinarily" there is some wiggle room for the defendant, but it appears to be taken away by section 5H1.12 (policy statement), which provides that "lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range." If we go to subpart 5K2, moreover, to which section 5H1.3 refers us, we find a section which states that diminished mental capacity is a basis for a downward departure only in the case of nonviolent crimes, U.S.S.G. § 5K2.13 (policy statement), and the defendant's crime was one of violence. § 4B1.2(1). He argues that diminished mental capacity refers only to cognitive factors, such as mental retardation or insanity that impairs the defendant's understanding of the moral or legal significance of his act. But in the criminal law generally, see Model Penal Code § 4.01(1) and comment 2; *People v. Hammerli*, 277 Ill.App.3d 873, 214 Ill.Dec. 886, 892, 662 N.E.2d 452, 458 (1996), and under the guidelines as well, *United States v. Cantu*, 12 F.3d 1506, 1516 (9th Cir.1993), though no longer in the federal defense of insanity, 18 U.S.C. § 17(a); *United States v. Denny–Shaffer*, 2 F.3d 999, 1003 n. 1 (10th Cir.1993), the term "mental capacity" refers to action as well as to understanding. The mind is the organ of volition as well as of reflection. A person who knows what he is doing

and that it is wrong but cannot control himself is deficient in mental capacity.

■ The textual argument against the defendant is not quite airtight. Recall that section 5H1.3 has that weasel word "ordinarily," implying that in an extraordinary case a mental or emotional condition might warrant a lighter sentence even if it did not fit the express exception in 5K2.13. And the "similar circumstances" to which section 5H1.12 refers might not be thought to encompass childhood sexual abuse by a parent, which is not all that similar to the sort of parental neglect, rather than abuse, conjured up by the term "lack of guidance." No doubt these guideline provisions make the defendant's diminished mental capacity and his abuse as a child "discouraged" factors, but the Supreme Court has now made clear that if a factor is not "forbidden," but is merely "a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline," the sentencing court may still use the factor as a basis for departing from the guidelines range "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon v. United States, supra,* —— U.S. at ——, 116 S.Ct. at ——.

■ These qualifications ("exceptional," out of "the ordinary") are important to the fundamental goal of the Sentencing Reform Act, which is to place federal sentencing on an objective, uniform, and rational (or at least articulable, nonintuitive) basis. U.S.S.G. ch.1, pt. A.3 (policy statement); *United States v. Hadaway,* 998 F.2d 917, 920 (11th Cir.1993); *United States v. Sullivan,* 895 F.2d 1030, 1032 (5th Cir.1990). If a miserable family history were in an average case a permissible basis for leniency (and a happy family history therefore a permissible basis for severity?), this would resurrect the pre-guidelines regime of discretionary sentencing. Cf. *United States v. Vela,* 927 F.2d 197, 199 (5th Cir.1991); *United States v. Daly,* 883 F.2d 313, 319 (4th Cir.1989). Just as in capital cases today, defense lawyers in run-of-the-mill federal criminal cases would hire psychologists, social workers, and other "mitigation specialists," *Stewart v. Gramley,* 74 F.3d 132, 136 (7th Cir.1996), to comb the defendant's personal and family history for evidence of adversity. The government would counter with its own expert witnesses. Not only would the sentencing process be encumbered, but the disagreement between experts would create a space in which a judge could defend any departure, upward or downward, from the sentencing guidelines. The result might be a better system of sentencing than we have under the guidelines; it would not be the system ordained by the Sentencing Reform Act.

At argument the defendant's able and vigorous counsel kept trying to get us to listen to the defendant's "story." A skillful lawyer, aided by psychologists hired as expert witnesses, can often tell an arresting story about the concatenation of circumstances that brought the defendant to commit the crime of which he has been convicted. The richer the causal history that the lawyer can trace—the more the crime can be made to seem the inevitable consequence of circumstances external to the defendant's character, or rather the more the defendant's character can be made to seem the product of external circumstances—the less responsible the defendant can be made to seem, and therefore the less deserving, under the retributive rationale of punishment, of punishment of average severity. By this means the guidelines can be unraveled before the eyes of the judge.

The proper way for lawyers and social scientists who believe that the guidelines give insufficient weight to the causal history of criminal activity to proceed is to submit their views to the Sentencing Commission. The Supreme Court in *Koon* emphasized the primacy of the Commission over the courts in determining the proper grounds for departures from the guidelines ranges. —— U.S. at ——, 116 S.Ct. at ——. If it is true that a person who is sexually abused as a child by a parent, or, to speak with greater precision, who experiences the combination of physical and sexual abuse, and neglect, that Doss Pullen experienced, is virtually predestined to become a violent criminal, this would certainly bear on the appropriate severity of punishment, though exactly how it would bear is uncertain, for the reasons indicated

earlier. It might point to a lighter sentence on retributive grounds but to a heavier sentence on other grounds, particularly the incapacitative. Those grounds must not be slighted. All this is for the Sentencing Commission to consider. It can assimilate, evaluate, and balance the findings of criminological research on the causes of particular forms of criminal behavior. The individual judge cannot.

We do not undertake to predict the Commission's response to such materials. In emphasizing the causal history of Pullen's crimes, his lawyer overlooks the gap between cause and responsibility. The existence of the one does not cancel the other. The male violent-crime rate is roughly ten times the female. Stephen J. Schulhofer, "The Feminist Challenge in Criminal Law," 143 *U.Pa. L.Rev.* 2151, 2154–55 (1995). This means that being male is a predisposing characteristic to violent crime; it is a "cause" of such crime in the same sense in which Pullen's history of being abused as a child may be a cause of his violent crimes. Would anyone argue that men are therefore less responsible for their violent crimes than women and so should be punished less severely? Human action is not uncaused. Being male, being from a broken, dysfunctional family, being brutalized, having a low IQ—all are factors predisposing an individual to crime. They are the factors trotted out by the mitigation specialists in capital cases. Allowed helter-skelter into ordinary criminal sentencing they would defeat the goals of the Sentencing Reform Act. How far they should be let in is an issue of judgment for the Sentencing Commission.

Although we do not think that a history of being abused as a child is in general a proper ground for a departure from the applicable guidelines sentencing range, we are mindful of the Supreme Court's ruling that a departure is permissible, even on the basis of a factor disfavored (but not actually prohibited) by the Sentencing Commission, if the defendant is able to show that in his particular case the presence of the factor made his case an extraordinary one. We are also mindful that the determination of whether the case is extraordinary is committed to the discretion of the district judge. —— U.S. at ——, 116 S.Ct. at ——. Pullen has not come close to satisfying his burden. He has not shown how his particular history of abuse makes him an extraordinary robber exceptionally deserving of lenient treatment. To grant a downward departure in these circumstances would have been an abuse of discretion.

■ A separate though related issue presented by this appeal is the judge's failure to address the defendant's argument that his criminal record—the two prior bank robberies and a number of other crimes—overstates the actual gravity of his criminal history and so should have been discounted in the calculation of the sentence. It appears that the reason that the judge did not mention the argument is that its principal basis was the very same causal history urged as an independent basis for departure. That history is no more properly used to chip away at criminal history than it is to lessen the gravity of the offense of conviction. Cf. U.S.S.G. ch. 4, pt. A (introductory commentary). It would be an end run. The secondary basis for the argument, the defendant's youth when he committed his other crimes, is a makeweight. The determination of his criminal history for sentencing purposes was based entirely on the two previous bank robberies, committed when he was 19 and 23 respectively. These could hardly be viewed as youthful indiscretions. It is true that he had also committed four thefts as a juvenile, and his youth when he committed them might have warranted some consideration had the judge relied upon them in determining the defendant's criminal history. (This is an area minutely regulated by the guidelines). See U.S.S.G. §§ 4A1.1 (application notes 1–3), 4A1.2(d); *United States v. Croom,* 50 F.3d 433, 435 (7th Cir. 1995); *United States v. Davis,* 48 F.3d 277, 279 (7th Cir.1995).) He did not.

AFFIRMED.