**UNITED STATES of America**

v.

**Charles WILKERSON, Defendant.**

**Crim. No. 98–10185–NG.**

United States District Court, D. Massachusetts.

Jan. 10, 2002.

---

374

John F. Palmer, Law Office of John F. Palmer, P.C., Boston, MA, for Charles Wilkerson.

Patrick Hamilton, Office of the United States Attorneys, Theodore B. Heinrich, U.S. Attorney's, Boston, MA, for U.S.

## SENTENCING MEMORANDUM

GERTNER, District Judge.

Charles Wilkerson was convicted by a jury of the distribution of crack cocaine. He was indicted with thirty other individuals for conspiracy to distribute crack cocaine. *See United States v. Lacy*, 99 F.Supp.2d 108 (D.Mass.2000). The Guideline range advocated by the government and probation was 140 to 175 months, based on a total offense level of 28 and a Criminal History Category of VI.

Mr. Wilkerson sought a departure on the grounds of his family circumstances, his criminal history, his conditions of confinement and the "totality of the circumstances." I sentenced Mr. Wilkerson to 120 months, departing only on the grounds of criminal history.

Mr. Wilkerson's story is tragic and compelling. He was abandoned by his parents at age 14, and from that point on, except for periods in the custody of the Department of Youth Services, he and his three siblings were homeless. He became the family's provider. He dealt drugs to obtain money for all their needs—food, clothes, school supplies—and when they found a place to live, rent money. While I have sentenced individuals with dysfunctional families before, I have never encountered a young man who had to raise himself.

Between the ages of 17 and 22, Mr. Wilkerson had numerous encounters with the police—a pattern of convictions in the district courts (for the most part) involving drugs, motor vehicle violations, and possession of burglarious tools. None involved violence.

Notwithstanding the utter disarray of his background, he has managed a consistent relationship with a woman for over nine years and they have been married for the last three. (The ceremony took place in jail.) They have two minor children. The probation officer was impressed with Mr. Wilkerson's wife and her efforts to provide a home for her two young sons and the depth of Mr. Wilkerson's concern for his young family.

With considerable reluctance, I have concluded that I have no jurisdiction to even consider the particular family issues here for an "extraordinary family circumstances" departure under U.S.S.G. § 5H1.6, because of the First Circuit's most recent decision in *United States v. Pereira*, 272 F.3d 76 (1st Cir.2001). *Pereira* suggests that an "extraordinary family circumstances" departure is only available to deal with the impact that a defendant's incarceration has on his family. It may not be applied to an individual who has managed to have a functional family of his own, notwithstanding great odds. Significantly, defense counsel has not even tried to meet the *Pereira* standard.

Nor was there any basis for a departure based on Mr. Wilkerson's account of the conditions of his detention. His counsel described the problems very generally. He presented a document which showed that Mr. Wilkerson had been assaulted during his detention but he provided no other details, no case law, and no indication why the facts of his detention should distinguish him from other pre-trial detainees.

Mr. Wilkerson also claimed that his criminal record—nonviolent, largely district court cases all between the ages of 17 and 22—overstated his culpability. I reviewed that record and I agreed, departing to a Criminal History IV, and sentencing Mr. Wilkerson to 120 months.

I could go no further because Mr. Wilkerson had a prior district court drug offense which, under 21 U.S.C.

§ 841(b)(1)(B)(iii), qualified him for the ten year mandatory minimum. While Mr. Wilkerson had asked for an extension to challenge that conviction in state court, and while that challenge looked promising, I declined to delay this sentencing any further. Mr. Wilkerson was convicted over two years ago; counsel did not bring a challenge to that state conviction until he had been convicted of the instant federal charges. The state challenge has been under advisement for some time.

The tragic bottom line is that for a non-violent street dealer for whom dealing drugs, although wrong, may well have meant survival, Mr. Wilkerson will be obliged to serve ten years in jail.

## I. BACKGROUND

 In order to apply the Guidelines to the case at bar, the Court is obliged to look carefully at the facts that the Guidelines have made relevant, chiefly facts pertaining to the offense and criminal history. But in order to determine the appropriateness of a Guideline sentence in this case (i.e., whether to depart from the Guidelines) the Court is obliged to conduct a broader review, including not merely facts made relevant by the Guidelines, but all relevant sentencing facts.[1]

### A. Personal Background

Mr. Wilkerson is a 26–year–old man, who was abandoned by his parents at age 14.[2] He was born on July 28, 1975, the second of four children of Austin Johnson and Robin Wilkerson. During the first ten years of his life, he witnessed the daily abuse of his mother at the hands of what his probation officer described as her "drug crazed" companion.[3]

1. Recognizing the limitations of a Guideline approach to all of the vagaries of a sentencing decision, departures were explicitly authorized by the Sentencing Reform Act if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). As the Supreme Court noted in *Koon v. United States,* while the Guidelines provide uniformity, predictability and detachment, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensure." 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The Supreme Court in *Koon* directed the district court to "make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." 518 U.S. at 98, 116 S.Ct. 2035.

 Plainly, in order to make a departure determination, the Court must have a perspective independent of the Guidelines—all the facts the case involves, and not just those facts made relevant by the Guidelines. Thus, 18 U.S.C. § 3553(a)(1) directs that the Court, "in determining the particular sentence to be imposed, shall consider—(1) the nature and circumstances of the offense and the history and characteristics of the defendant." Likewise, 18 U.S.C. § 3661, which was codified along with the Sentencing Reform Act, encourages a broader review. It states: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. And the Commission itself directed that, when considering a departure from a Guidelines prescribed sentence, "the court may consider, without limitation, any information concerning the background, character, and conduct of the defendant." U.S.S.G. § 1B1.4. *See United States v. Ribot,* 97 F.Supp.2d 74, 75 n. 2 (D.Mass.1999).

2. These facts derive from the Presentence Report and were uncontested. In addition, the Court has reviewed the voluminous records from the Department of Social Services.

3. Even before the total disintegration of the family when Mr. Wilkerson was 14, there

At 14, his father left home. His mother retreated to her bedroom, effectively abandoning the children because of her crack cocaine addiction. Then, according to Department of Social Services records, the house was raided by police as a "crack house." The family became homeless, finding temporary shelter at the homes of relatives and friends, when they could, or motels, or the streets. Records reflect that Mr. Wilkerson' mother attempted suicide numerous times, that numerous neglect petitions were filed for the children by the authorities that encountered them at school, or on the street. They speak of a family "in crisis," of a mother "overwhelmed," of children raising themselves.

Before he was 17, Mr. Wilkerson ran afoul of the law and was in and out of the custody of the Department of Youth Services. He never graduated from high school; indeed, he barely attended school at all because of the disarray at home.

Older youths from the Castlegate gang recruited Mr. Wilkerson to sell drugs, knowing that there was no parental oversight. With the proceeds from the sale of drugs, Mr. Wilkerson paid for his siblings' needs—school supplies, food, clothes—and tried to raise money for rent.[4] As probation notes, "In Ms. Wilkerson's mind, her son was a hero."

On July 21, 1998, when Mr. Wilkerson was 23, he married the former Denise Hines. The couple had met in 1992 when Denise was a 16–year–old student at the Jeremiah P. Burke High School, and Mr. Wilkerson was a 17–year–old DYS parolee. They are the parents of two sons, Charles and Christian, five and four respectively.

Denise Hines Wilkerson remains in touch with her husband, seeing him regularly. She intends to maintain their marriage. She has set up a home for herself and her two minor children.[5] She described him as a gentle father who takes great joy in his family. She plans to enroll in a culinary arts program.

### B. The Castlegate Indictments

The thirty-one defendants indicted in this case may be divided into three groups: The first consists of those defendants charged with the more serious offenses in the superceding indictment, namely Racketeering in violation of 18 U.S.C. § 1962(c) and 1962(d) and Murder in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(5), in addition to conspiracy to possess cocaine base with intent to distribute and distribution. A second group consists of those individuals who are cooperating with the government, and are likely to receive departures from Guideline sentencing. The third group are those charged with drug sales, not also associated with violent behavior. Charles Wilkerson fits into the latter category.[6]

---

were reports of serious problems: a neglect petition from 1987 (when Mr. Wilkerson was 11) indicating that his mother admitted to wrapping an extension cord around Mr. Wilkerson' neck, trying to strangle him. On other occasions she left the four children alone when the oldest was only 11.

4. This theme, of Mr. Wilkerson's functioning as the sole support of his mother and three siblings, is repeated throughout the records of the Department of Social Services.

5. Mr. Wilkerson also has a daughter, Zahnkryh, now five years old, born of his relationship with Ingrid Dottin.

6. As I noted in *United States v. Lacy*, 99 F.Supp.2d 108 (D.Mass.2000) even though [this third category of offenders] may be similarly situated, they have faced a wide range of lengthy sentences, a range that in my judgment did not reflect differences in their culpability. Individuals who were identified as suppliers to several of the defendants faced lower sentences than individuals who were "only" street dealers. Some street dealers

Mr. Wilkerson was tried separately. Indeed, he was the only defendant charged exclusively with drug violations (rather than acts of violence) who elected to go to trial. The government elected to proceed only on the two counts of crack cocaine distribution (in violation of 21 U.S.C. § 841(a)(1)).[7] These charges were based upon controlled purchases made at Blue Hill Avenue in Boston. The witnesses in each instance were under the supervision of Drug Enforcement Administration (DEA) agents and officers of the Boston Police Department. The jury found Mr. Wilkerson guilty of one count of distribution (for a total of one gram of crack) but was unable to come to a decision on the second count. The government dismissed the conspiracy count.

### C. *The Ten Year Mandatory Minimum*

Prior to the date of the trial, the government filed an information pursuant to 21 U.S.C. § 851(a) which certified that Mr. Wilkerson had incurred one prior felony drug conviction which fit the requirements of 21 U.S.C. § 841(b)(B)(iii). On May 10, 1993, when Mr. Wilkerson was 17, he was convicted in the Dorchester District Court of Possession with Intent to Distribute Crack Cocaine. That conviction, coupled with the instant one, triggered the minimum mandatory sentence of ten years and a maximum sentence of life. 18 U.S.C. § 841(b)(B)(iii).

While Mr. Wilkerson has challenged that conviction in state court he could not do so in this sentencing proceeding. Under 21 U.S.C. § 851(e), he could only challenge a prior conviction which is used as a ground for a sentencing enhancement in federal court within five years after Mr. Wilkerson's conviction. By the time the federal information was filed in this case, the five year period had run. Indeed, Mr. Wilkerson did not challenge the 1993 conviction until after he had been convicted of the instant federal offense on November 1, 1999.

The challenge to the 1993 conviction is based on the alleged inadequacy of the colloquy engaged in by the district court prior to the entry of Mr. Wilkerson's guilty plea. The state district court denied the challenge with the following note:

> Denied. On the very date (5/10/93) he received this sentence, defendant apparently pleaded to another charge in Dorchester jury session # 9207JC0393. He had appealed a prior case to the jury session and defaulted there. He also defaulted on this case.
>
> *While the defendant probably did not get a full colloquy on this case,* he was advised of his right to appeal to a jury trial. He had exercised that right in the past and disposed of a case in the jury session.
>
> On 5/10/93, he took an 18 mos. committed sentence in the jury session and a suspended sentence on this case.

(Italics supplied.) Mr. Wilkerson has appealed; the issue remains unresolved.

## II. *ANALYSIS*

### A. *Family Circumstances*

Mr. Wilkerson moved for a departure based on extraordinary family circum-

---

faced higher sentences than their perhaps more culpable peers in the drug dealing activity if their criminal records triggered "career offender" status. 99 F.Supp.2d at 111.

7. Section 841(b)(B)(iii) holds, in pertinent part: "If any person commits such a violation [distribution of 5 grams or more of crack cocaine] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment."

stances. I concluded that I did not have jurisdiction to depart downward on this ground.

■ In *United States v. Thompson*, 74 F.Supp.2d 69 (D.Mass.1999), *rev'd, United States v. Thompson*, 234 F.3d 74 (1st Cir. 2000), I asked the following question concerning the scope of departure for extraordinary family obligations: "[A]m I simply identifying which family circumstances justify a departure on the theory that an exceptional family man or woman is somehow less culpable than one who ignores his family responsibilities? Or should I focus on the impact of incarceration on the extended family and whether that impact is somehow exceptional or atypical." 74 F.Supp.2d at 74.

■ The First Circuit apparently answered this question in *United States v. Pereira*, 272 F.3d 76 (1st Cir.2001). The only relevant question is the impact of incarceration on innocent dependents. In *Pereira*, the court held that a defendant must be found to be "irreplaceable" to his or her family before the Court can depart downward under this section. Since Mr. Wilkerson alleged no "extraordinary" impact on his family, this departure was not available to him.

Tragically, it did not matter for the purposes of the Guidelines how extraordinary it was that Mr. Wilkerson has been able to carve out a family life of sorts from the detritus of his childhood, or that his drug dealing may well have been all he could do when he found himself homeless at 14.

### B. *The 1993 Conviction*

Mr. Wilkerson argues that he should be permitted to challenge the 1993 conviction on which the sentencing enhancement is based in this Court, if the prior conviction is "presumptively void" under *United States v. Mitchell*, 18 F.3d 1355, 1361 (7th Cir.1994). In *Mitchell*, the Court noted that the reason for its decision limiting collateral review of state convictions only to those instances in which the conviction's invalidity is apparent on the face of the record was that a federal sentencing hearing was an inappropriate forum for a fact-intensive inquiry into the validity of a prior state conviction. 18 F.3d at 1360–61. *Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) casts doubt on even the limited exception in *Mitchell*. While *Mitchell* carves out "presumptively void" convictions from the general rule barring collateral attack on state convictions in a sentencing proceeding, *Custis* seems to permit challenges only to convictions obtained in violation of the right to counsel.

■ I need not resolve the issue. Even if *Mitchell* is the standard, this record is inadequate. To be sure, the state district court implies that the colloquy was defective, that Mr. Wilkerson "probably did not get a full colloquy." The state court judge suggests that that failure can be excused because Mr. Wilkerson knew he had a right to appeal, and had appealed in other cases. Mr. Wilkerson's actual knowledge of his rights is not enough to justify an inadequate judicial colloquy.

The "presumptively void" standard under *Mitchell* contemplated different situations—situations in which the conviction's invalidity is clear on the record, without further "fact intensive" inquiry. I could not say that this situation fits the *Mitchell* standard.

### C. *Criminal History*

A number of courts have allowed departures below the ranges set by the Guidelines based on the principles set forth in U.S.S.G. § 4A1.3. Recognizing the inadequacies of the criminal history scoring system, the Sentencing Commission en-

couraged departures where "reliable information" indicates that the criminal history category "significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes."[8] Clearly, § 4A1.3 departures are "encouraged departures" under *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

■ Significantly, to qualify for this departure, unlike departures in Chapter 5, the Court does not have to find that there is something atypical about the record. Specifically, the court does not have to find that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(A)(7)(b). The statutory authority for the promulgation of U.S.S.G. § 4A1.3 lies not in 18 U.S.C. § 3553(A)(7)(b), the departure authority, but "in the basic provision of the Sentencing Reform Act that gives the Commission the authority ... to take into account, where relevant, the defendant's criminal background," *United States v. Shoupe,* 988 F.2d 440, 446 (3d Cir.1993).

In *Shoupe* the court held that because § 4A1.3 is specifically provided for in the Guidelines, it is "conceptually distinct from the provision in § 5K2.0 for departures based on factors not accounted for in the Guidelines." *Shoupe,* 988 F.2d at 442. *See, e.g., United States v. Cadavid,* 192 F.3d 230, 238–39 (1st Cir.1999).

Criminal history departures permit a court to put the defendant's record in the context of his life and background. For example, notwithstanding the Guidelines' prohibition on considering the defendant's

age in evaluating the appropriate sentence (in U.S.S.G. § 5H1.1), when the Guidelines address criminal history, the commentary suggests that age at the time of various offenses is one of the factors the court could balance in evaluating adequacy of the score, that "younger defendants (e.g. defendants in their early twenties or younger) who are more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants." 4A1.4, comment (backg'd.). Other judges have considered the relationship between the specific offenses and drug use, notwithstanding U.S.S.G. § 5H1.4. As Judge Weinstein noted in describing a defendant's record, as a basis for a downward departure, "[h]is prior arrests result from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics." *United States v. Hammond,* 37 F.Supp.2d 204, 205 (E.D.N.Y.1999).

■ But I did not have to consider Mr. Wilkerson's age or his background in order to conclude that this criminal history over represented his criminal culpability. My general methodology—derived directly from the Guideline text—is outlined in *United States v. Footman,* 66 F.Supp.2d 83, 93 (D.Mass.1999) aff'd. 215 F.3d 145 (1st Cir.2000) (upward departure), and *United States v. Leviner,* 31 F.Supp.2d 23 (D.Mass.1998) (downward departure):

> ...[W]hat is it about the [criminal history] score which created the under (or over) valuation of the record?: (i) prior sentences not counted in computing criminal history (e.g., foreign sentences),

---

8. Indeed, some commentators noted the "extensive use of departures" even from sentences generated by career offender provisions. Michael S. Gelacak and Ilene H.

Nagel, *Departures Under the Federal Sentencing Guidelines: An Empirical and Jurisprudential Analysis,* 81 Minn. L.Rev. 299, 356 (1996).

(ii) prior sentences of "substantially more than one year" that derive from independent crimes on different occasions, *see* § 4A1.3(a) and (b); (iii) the timing of convictions—did they follow closely one after another, or while another charge was pending, *see* U.S.S.G. § 4A1.3(d); and (iv) the nature of the convictions,—e.g., assaultive behavior or non-violent conduct.

*Footman*, 66 F.Supp.2d at 99.

In this case, Mr. Wilkerson's adult offenses began at age 17, when he was found guilty of receiving stolen property, larceny, and possession of burglarious tools in the Dorchester District Court. He was sentenced to probation. He was then charged with possessing cocaine with intent to distribute, again in the Dorchester District Court (the 1993 offense described above). Probation on the first charge was revoked, and he was sentenced to 18 months; two years suspended sentence on the second. When he was released he was picked up for operating a motor vehicle after his license was suspended, an insurance violation, and then operating to endanger.[9] He received a six-month sentence. More motor vehicle and district court drug charges followed with sentences like 90 days committed, three months committed (with the sole exception of a trafficking offense in the Plymouth District Court for which he received three to four years.)[10]

There are no convictions for crimes of violence. Mr. Wilkerson's score is at the very highest level of the criminal offender score—VI—because, apart from the Plymouth case, he received sentences from district court judges that just barely triggered scoring under the Guidelines, i.e., ninety days, 6 months, 18 months. As a result, he is in the same category as someone with a succession of violent crimes, for which they received multiple lengthy sentences. Mr. Wilkerson's situation, in short, is just the kind of situation for which the § 4A1.4 departure authority was given. The contrivance of Guideline scoring led to a result out of proportion to his real culpability.[11] He is more like offenders at the midpoint of records, Category III or IV.

This analysis is consistent with the analyses of other judges of this Court. Two examples: In *United States v. Augustine Vega*, No. 99–10358 (D.Mass. Nov. 30, 1993) Judge Zobel departed downward from a range of 188 to 235 months to 78 months because the defendant's criminal history substantially overstated his culpability, where that record included conviction for an armed robbery and assault with a dangerous weapon (tried in the Essex Superior Court), and larceny from the person—a far more violent record than Mr. Wilkerson's. In *United States v. Eugene Terrell Patrick*, No. 96–10047 (D.Mass. Feb. 26, 1999), Judge Keeton departed downward two levels from the 151 to 188 month range, to sentence the defendant to 120 months. This was so even though Mr. Patrick had a juvenile record and, as an adult, was convicted of multiple assault,

---

**9.** He attracted police attention because he was operating a motorcycle without protective eye gear. When the police investigated, it appeared that the plates attached to the vehicle had been issued to another motorcycle. When the police signaled for him to stop, he drove the motorcycle onto the sidewalk, narrowly missing a pedestrian, and then crashing the motorcycle into a police car.

**10.** The Plymouth offense does not count under § 841 because it took place *after* the conduct giving rise to the federal charges.

**11.** Under U.S.S.G. § 4A1.1, three points are added for sentences over one year and one month, two points for sentences over 60 days, etc.

382

larceny, and firearms.[12]

For all of the above reasons, I have departed downward to a Category IV and sentenced Mr. Wilkerson to the midpoint of that range, or 120 months.

**SO ORDERED.**

12. The materials underlying these cases were made available to the parties in *United States* v. Lacy, supra.