UNITED STATES of America,
Plaintiff,

v.

Scott HAMMOND, Defendant.

No. 01–CR–108.

United States District Court,
E.D. Wisconsin.

Jan. 7, 2003.

Carol L. Kraft, for Plaintiff or Petitioner.

Nila J. Robinson, for Defendant or Respondent.

## DECISION AND ORDER

ADELMAN, District Judge.

Defendant Scott Hammond pled guilty to a charge of conspiracy to participate in an enterprise engaged in racketeering activity in violation of 18 U.S.C. § 1962(d). The charges arose out of defendant's involvement with the Outlaws Motorcycle Club. Specifically, he participated in conspiracies to murder members of rival motorcycle clubs (although no one was actually harmed) and to distribute cocaine and marijuana (mostly to other members of the Outlaws).

A pre-sentence report (PSR) was prepared, which calculated defendant's offense level under the sentencing guidelines as 30 and his criminal history category as III. The propriety of those determinations is not in dispute, but defendant moves for a downward departure under U.S.S.G. § 4A1.3, arguing that his criminal history category substantially overstates the seriousness of his past criminal conduct. In this decision I address the motion.

## I. FACTS

Defendant's criminal history score is based on three prior sentences. First, he was convicted of reckless use of a weapon and criminal damage to property in 1982.[1] He was sentenced to 60 days in jail and 18 months probation, respectively. The offenses were consolidated[2] and based on a

1. Under U.S.S.G. § 4A1.2(e)(1), sentences exceeding one year and one month are counted if they were imposed within fifteen years of commencement of the instant offense. Any other sentence is counted only if imposed within ten years of commencement of the instant offense. Because defendant became involved in the instant racketeering conspiracy in 1990, this 1982 conviction falls within the ten year window of § 4A1.2(e)(2).

2. Under § 4A1.2(a)(2) & cmt. n. 3, sentences in "related cases"—those "consolidated for trial or sentencing"—are not counted separately.

single incident that occurred on January 18, 1982, in which defendant fired two shots from a shotgun, one of which struck a home. The PSR does not indicate that defendant was trying to harm anyone, and from what I have gathered from the parties' submissions, it appears that defendant was drunk and fired the weapon out of frustration when his car got stuck in the snow. Defendant received two criminal history points for these convictions.[3]

Second, defendant was convicted of drunk driving in 1982. It appears that this was a civil matter (as first offenses in Wisconsin are, *see* Wis. Stat. § 346.65(2)(a)),[4] and that defendant received a fine. He also received one criminal history point for the conviction.

Finally, defendant was convicted of burglary in 1985 and sentenced to four years prison, stayed in favor of four years probation, with four months jail as a condition.[5] The PSR indicates that this conviction arose out of defendant's attempt, foiled by police, to steal cartons of cigarettes from a gas station. Defendant indicates that he was again drunk at the time. This conviction counted for two points.

Defendant thus has five criminal history points, which places him in category III.[6] The parties do not dispute that all of these convictions are properly counted under § § 4A1.1 & 4A1.2. However, the Commission has provided district courts with substantial discretion to depart from the otherwise applicable criminal history category under the appropriate circumstances.

## II. DISCUSSION

### A. Section 4A1.3 Departures

Section 4A1.3 of the guidelines provides:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.
>
> . . .
>
> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.

█ It is important to note that a § 4A1.3 departure is not the same type of departure as referred to in 18 U.S.C. § 3553(b) and chapter 5 (specifically § 5K2.0) of the guidelines manual. *See United States v. Shoupe*, 988 F.2d 440,

---

3. Under § 4A1.1, sentences of imprisonment exceeding one year and one month count for three points, sentences of at least sixty days count for two points, and all other sentences count for one point. Because defendant was sentenced to 60 days on the reckless use of a weapon count, he received two criminal history points.

4. Drunk driving is a "counted" offense, even if the state treats it as a civil traffic matter. *See* U.S.S.G. § 4A1.2 cmt n. 5.

5. Defendant stated that the sentence was four months not six as indicated in the PSR. In either case, it counts for two points.

6. Category III encompasses those with four to six points.

444–45 (3d Cir.1993); *United States v. Lacy*, 99 F.Supp.2d 108, 121 n. 28 (D.Mass. 2000). Under those provisions, departures are permitted only when " 'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " *Koon v. United States*, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting 18 U.S.C. § 3553(b)).

While the Commission has provided some guidance in making departure decisions under chapter 5 by listing certain factors that are "forbidden," "encouraged," and "discouraged" bases for departure, *id.* at 93–95, 116 S.Ct. 2035, departures under § 5K2.0 will often be based on circumstances peculiar to the case that the Commission did not (and could not) consider in formulating the guidelines. Indeed, the court may not depart if the Commission has taken the proposed factor into account in setting the sentence for the particular offense, unless the factor is present to such an unusual degree as to take the case out of the "heartland" of cases.[7] Moreover,

such departures are "unguided" in that the Commission has not dictated to what extent a court should depart after it determines that departure is appropriate.[8] Finally, such departures are usually made along the vertical (offense level) axis of the sentencing grid.

By contrast, in § 4A1.3,

the Commission specifically provided district courts with flexibility to adjust the criminal history category calculated through the rigid formulae of § 4A1.1 or § 4B1.1 "if reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. Section 4A1.3 is both structurally and in its purpose unlike § 5K2.0 and 18 U.S.C. § 3553(b), which allow district courts to depart from the sentencing range calculated under the Guidelines for mitigating circumstance not adequately considered by the Commission in formulating the Guidelines.

*Shoupe*, 988 F.2d at 445.[9]

First, unlike chapter 5 departures, the court need not determine that some unusu-

---

7. The appropriate test for § 5K2.0 departures was set forth in *Koon:* First, what factors of the case make it special or unusual? Second, has the Commission forbidden, encouraged or discouraged departures based on those factors? "If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines

taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland." *Id.* at 95–96, 116 S.Ct. 2035 (citations and internal quote marks omitted).

8. Such departures must only be reasonable and adequately reflect the structure of the guidelines. *United States v. Cruz–Guevara*, 209 F.3d 644, 647 (7th Cir.2000); *see also* 18 U.S.C. § 3742(e)(3). The Seventh Circuit has provided some structure by approving a method that involves calculating the defendant's sentence by analogy to existing guideline provisions. *Cruz–Guevara*, 209 F.3d at 648.

9. *But see United States v. Collins*, 122 F.3d 1297, 1305 (10th Cir.1997) (disagreeing with *Shoupe* and concluding that § 4A1.3 falls within the purview of § 5K2.0). The Seventh Circuit has not yet weighed in on this issue. In *United States v. Rosche*, 239 F.Supp.2d 858

al or extraordinary factor justifies a criminal history departure under § 4A1.3. This is so because the Commission has recognized the inherent limitations in the mathematical approach to criminal history it has adopted. *See* U.S.S.G. § 4A1.3 (background commentary) ("[T]he criminal history score is *unlikely* to take into account all the variations in the seriousness of criminal history that may occur.") (emphasis added). Therefore, the Commission has provided district courts with specific authority to make "adjustments"[10] in the criminal history category based only on "reliable information." The information need not be sufficient to take the case out of the "heartland" of cases—only "reliable"—and indicative of either (1) a significant over-representation of the seriousness of the defendant's criminal history *or* (2) the likelihood that the defendant will commit further crimes.[11] U.S.S.G. § 4A1.3, ¶ 3.

■ Thus, the discretion possessed by the district court under this provision is very broad; if one were to use *Koon*'s terminology, § 4A1.3 departures would have to be considered "encouraged." *United States v. Wilkerson*, 183 F.Supp.2d 373, 380 (D.Mass.2002); *see* Spencer Freedman, *In Defense of Crimimal Histo-*

*ry Departures*, 13 Fed. Sen. Rptr. 311, 313 (May/June 2001) ("In promulgating § 4A1.3, the Commission established an enormous reservoir of judicial discretion to achieve the purposes of sentencing ....").

Second, the court bases its decision on information—prior convictions—that has already been taken into account in calculating the sentence under the guidelines. The court is also able to consider facts and circumstances that may be barred (or at least discouraged) from consideration in a § 5K2.0 departure. *See Shoupe*, 988 F.2d at 447 ("We hold that as the plain language of § 4A1.3 provides, a district court considering a § 4A1.3 departure may weigh 'reliable information [that] indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes,' U.S.S.G. § 4A1.3, including factors which the Commission may have otherwise considered in promulgating other provisions of the Guidelines.").

■ Third, these departures are "guided" in that the Commission has instructed courts to place the defendant in the criminal history category that most accurately reflects the seriousness of his prior record. Finally, the court usually moves horizontally on the sentencing grid.[12]

---

(E.D.Wis.2002), I departed from the defendant's criminal history category using a § 5K2.0 analysis. However, in that case I did not find that the defendant's category overstated the seriousness of his record. Rather, I departed based on the unusual circumstances present there, where two prior convictions that should have been consolidated and thus counted only once had not been joined and were counted separately under § 4A1.2.

10. The Third Circuit has suggested that the Commission could have labeled § 4A1.3 an "adjustment" provision rather than a "departure" provision. *Shoupe*, 988 F.2d at 445 n. 7.

11. The court need find only one or the other present in order to depart, not both. The

focus of each prong is different. With the latter the court looks backward, analyzing the defendant's past; with the former, the court looks forward, predicting his future behavior.

12. When a court concludes that a defendant's designation as a career offender under § 4B1.1 results in an overstatement of the seriousness of his prior record it may depart both horizontally and vertically. *See United States v. Shoupe*, 35 F.3d 835, 837–38 (3d Cir.1994) (collecting cases). This is so because § 4B1.1 calls for an increase in both criminal history category and offense level. *See also United States v. Evans*, No. 97–3527, 1999 WL 552608, at *1, 1999 U.S.App. LEXIS

■ Therefore, "section 4A1.3 manifests the Commission's view that a sentencing judge should exercise discretion whenever the judge concludes that the consequences of the mathematical prior-history calculation, prescribed by sections 4A1.1 and 4A1.2, either underrepresent or overrepresent the seriousness of a defendant's prior record." *United States v. Rivers,* 50 F.3d 1126, 1131 (2d Cir.1995). There can be no exhaustive list of factors the court should consider in determining whether the seriousness of a defendant's criminal history or the likelihood of recidivism is over-represented by his designated category. As Judge Gertner has noted, "Criminal history departures permit a court to put the defendant's record in the context of his life and background." *Wilkerson,* 183 F.Supp.2d at 380. Every defendant is different and must be considered as an individual.

Nevertheless, a review of the cases and commentary reveals certain factors common to § 4A1.3 downward departures.[13] In evaluating the circumstances of each case, the court should also consider the purposes of chapter four of the guidelines—to provide harsher sentences for those with a prior record of misconduct, general deterrence of crime, and protection of the public from criminal recidivists. U.S.S.G. ch. 4, part A (introductory commentary); *see also* Freedman, *supra,* at 312 (stating that the Commission devised the criminal history axis to provide for "just deserts" to recidivists and incapacitation for crime control purposes).[14]

---

17962, at *3–5 (6th Cir. July 26, 1999) (affirming downward departure of one offense level to compensate for overstatement of criminal history).

13. Many of the courts in the cases cited herein considered a combination of factors in deciding whether to depart. However, I have broken the various factors out for purposes of analysis.

## 1. Age of Priors

■ First, the court may examine the age of the prior convictions in relation to the instant offense. Indeed, § 4A1.3 provides as an example of a proper downward departure a defendant with two misdemeanor convictions close to ten years prior to the instant offense. *See also Collins,* 122 F.3d at 1307 (affirming departure based in part on fact that one of predicate convictions occurred close to ten years prior to the instant offense, involved conduct committed beyond the ten-year time limit, and resulted in a relatively lenient sentence); *Shoupe,* 988 F.2d at 447 (stating that fact that priors occurred nearly fifteen years before instant offense was relevant to § 4A1.3 determination). Such a defendant would likely not present the same danger as a defendant whose convictions continued up to the instant offense and whose criminality could be seen as escalating.

The court may also consider whether a delay in the prosecution of the prior offense resulted in its inclusion under the ten·and fifteen year windows of § 4A1.2(e). *See Collins,* 122 F.3d at 1308 (citing *United States v. Martinez,* 77 F.3d 332, 336–37 (9th Cir.1996)). Consistent with the goal of reducing unwarranted sentencing disparity, it is appropriate for the court to remedy the unfairness that would result by inclusion of an offense committed years outside the normal window which was included due only to a delay in initiating or

---

14. Of course, these purposes tie into the language of § 4A1.3; if the defendant's criminal history category overstates the seriousness of his prior conduct he is not as deserving of punishment; and if his category overstates the likelihood of recidivism he need not be imprisoned as long for the protection of the public.

concluding prosecution brought about through no fault of the defendant.

### 2. Defendant's Age at the Time of the Priors

Second, the court may consider the age of the defendant when he committed the prior offenses. *See Shoupe,* 988 F.2d at 447 (stating that defendant's age and immaturity at time of priors were relevant factors); *United States v. Brown,* 985 F.2d 478, 482 (9th Cir.1993) (holding that court could consider defendant's age at the time he committed prior offenses); *United States v. Brown,* 903 F.2d 540, 544–45 (8th Cir.1990) (noting that while age is not ordinarily relevant in § 5K2.0 departure, it may be considered under § 4A1.3); *Wilkerson,* 183 F.Supp.2d at 380 (departing where defendant's convictions occurred between ages of 17 and 22 and mostly involved drug and motor vehicle offenses); *see also United States v. Abbott,* 30 F.3d 71, 72–73 (7th Cir.1994) (remanding for consideration of § 4A1.3 departure where defendant argued that priors were committed in his youth). If the defendant committed the prior offenses when young and immature he could be seen as less dangerous than one who, well into adulthood, decided to break the law.

■ On the other hand, the Commission has noted that a defendant's youth may at times portend increased dangerousness. U.S.S.G. § 4A1.3 cmt. (background) ("This may be particularly true in the case of younger defendants (e.g., defendants in their early twenties or younger) who are more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants.").[15] The determination of how the defendant's age impacts on the appropriateness of his criminal history cat-

egory must therefore be made on a case-by-case basis, and departures should not be granted as a matter of course to those whose priors were committed in their youth. *See United States v. Pullen,* 89 F.3d 368, 372 (7th Cir.1996).

### 3. Drug and Alcohol Abuse

Third, the court may analyze whether the prior offenses were committed while the defendant was under the influence of drugs or alcohol, or suffering from the effects of a mental disorder. *See United States v. Hammond,* 37 F.Supp.2d 204, 205 (E.D.N.Y.1999) (departing from category VI to III where defendant "had no history of violent behavior [and his] prior arrests resulted from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics"); *Lacy,* 99 F.Supp.2d at 119 (departing where defendant's record was "largely non-violent, and relatively minor, the kind that characterizes an out-of-control addict"); *see also Abbott,* 30 F.3d at 72–73 (remanding for consideration of § 4A1.3 departure where defendant argued that priors were "petty crimes related to his substance abuse addictions"). Particularly if the defendant has taken steps to deal with his substance abuse or mental illness, the court may conclude that counting the offenses committed while suffering the effects of addiction or illness results in an overstatement of the seriousness of his criminal history or the likelihood that he will repeat his crimes. *See United States v. Fletcher,* 15 F.3d 553, 557 (6th Cir.1994) (noting defendant's attempts to deal with his alcohol problems in context of § 4A1.3 departure), *overruled on other grounds as*

---

**15.** I note that one court has sanctioned a criminal history departure based on the finding that the defendant's *present* age and infir- mity made him an unlikely recidivist. *Collins,* 122 F.3d at 1307.

*stated in United States v. Jones,* 107 F.3d 1147 (6th Cir.1997).

### 4. Circumstances of Prior Offenses

Fourth, the court may consider the circumstances of the defendant's prior convictions. For example, were they non-violent and/or dissimilar in nature to the instant offense? While the guidelines focus on the *length* of the prior sentences, analysis of the *nature* of the offense may better reflect the seriousness of the record and the likelihood of recidivism; society is in greater need of protection from violent criminals and those who appear to be making a career of a certain type of crime. *See* Freedman, *supra,* at 312 ("For example, the criminal history score does not take criminal specialization into account, which for certain categories of crimes such as sex offenses, is a reliable indicator of recidivism."); *see also United States v. Mishoe,* 241 F.3d 214, 219 (2d Cir.2001) (stating that sentencing court could consider the amount of drugs involved in the prior offenses, defendant's role in those offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by the guidelines); *United States v. Spencer,* 25 F.3d 1105, 1113 (D.C.Cir.1994) (remanding for consideration of § 4A1.3 departure based on "relatively minor nature" of prior offenses); *Fletcher,* 15 F.3d at 557 (affirming departure based in part on type and unrelatedness of prior convictions); *Brown,* 985 F.2d at 482 (holding that court could consider nature of defendant's prior convictions under § 4A1.3); *United States v. Summers,* 893 F.2d 63, 67–68 (4th Cir. 1990) (affirming decision to depart by excluding minor driving offenses); *Wilkerson,* 183 F.Supp.2d at 381 (departing where defendant had no convictions for crimes of violence but mostly drug and motor vehicle offenses); *United States v. Wilkes,* 130 F.Supp.2d 222, 239–40 (D.Mass.2001) (departing to category I where defendant had only "two convictions for minor drug offenses" yet was placed in category III); *United States v. Leviner,* 31 F.Supp.2d 23, 32–34 (D.Mass.1998) (departing where defendant's priors where minor, mostly motor vehicle and possession charges, and non-violent); *United States v. Miranda,* 979 F.Supp. 1040, 1043–44 (D.N.J.1997) (discounting traffic convictions "distinct in seriousness and kind from the instant offense"), *appeal dismissed,* 159 F.3d 1354 (3d Cir.1998); *United States v. Anderson,* 955 F.Supp. 935, 937 (N.D.Ill.1997) (departing from category III to II based on determination that inclusion of drunk driving and misdemeanor battery convictions resulted in overstatement of seriousness of defendant's criminal history); *United States v. Stevenson,* 829 F.Supp. 99, 100 (S.D.N.Y. 1993) ("Where prior crimes involve behavior posing significant risks to the public, moral turpitude, organized criminal activity, fraudulent intent, or behavior related to the activity for which the defendant is being sentenced, consideration of such crimes in determining the defendant's sentence is ordinarily appropriate"; but when the defendant's convictions arise from personal drug use a departure may be warranted); *United States v. Hughes,* 825 F.Supp. 866, 869 (D.Minn.1993) (departing from category II to I where defendant's record consisted of a one-point conviction for stealing two packs of cigarettes and a seven year, old one-point misdemeanor conviction).

### 5. Length of Prior Sentences

Fifth, the court may consider the length of the sentence the defendant received for the prior convictions. Was the sentence just long enough to trigger a two point addition rather than one? *See Wilkerson,* 183 F.Supp.2d at 381. The Commission has indicated that it is proper for the court

to consider whether the prior sentences were substantially *longer* than that needed to trigger a three point addition, *see* U.S.S.G. § 4A1.3(b);[16] it is only proper to also consider whether the sentence was barely enough to trigger a two or three point score.

Further, the court can consider whether the defendant was promptly paroled, which may reflect the state's evaluation of the defendant's dangerousness. *See United States v. Senior*, 935 F.2d 149, 151 (8th Cir.1991) (affirming departure where district court noted that defendant had been paroled after serving only fraction of his sentence).

Finally, the court can consider whether, in light of the length of the prior sentences the defendant received, the applicable criminal history category produces a sentence far in excess of what is required to achieve a deterrent effect. *See Mishoe*, 241 F.3d at 220. For example, if the defendant's prior sentences were measured in months or days, a federal sentence of just a few years would likely provide a significant deterrent effect.

### 6. Circumstances of Defendant's Life at the Time of Priors

Sixth, the court may consider what was going on in the defendant's life at the time he committed the prior offense(s). Did he steal to feed his family or simply to enrich himself? *See Wilkerson*, 183 F.Supp.2d at 377 (departing where defendant sold drugs to support his siblings, who had been abandoned by their parents). While socio-economic status is an improper basis for a § 5K2.0 departure, *see* U.S.S.G. § 5H1.10,

when considering the severity of a defendant's prior misconduct and the likelihood that he will repeat his crimes, such considerations are surely relevant.

### 7. Proximity of Priors

Finally, the court may consider the closeness in time of the prior offenses. Were they part of one "spree" that constituted but a single deviation from an otherwise law abiding life, or do they constitute separate and independent decisions to violate the law? *See Shoupe*, 988 F.2d at 447; *see also United States v. Bowser*, 941 F.2d 1019, 1024–25 (10th Cir.1991) (affirming departure where defendant's two previous convictions were committed when he was only 20 years old, within two months of each other, and were punished by concurrent sentences);[17] *Senior*, 935 F.2d at 151 (affirming departure where district court noted that three priors were "more or less one criminal episode" and concurrent sentences were imposed for the three); *United States v. Smith*, 909 F.2d 1164, 1169–70 (8th Cir.1990) (affirming departure where defendant's priors occurred during two month period of time when he was 19).

**With these considerations in mind I turn to the present case.**

### B. The Present Case

■ For several reasons, I conclude that defendant's criminal history category significantly overstates the seriousness of his prior criminal conduct and the likelihood of recidivism. First, his prior convictions are twenty-one and eighteen years old, respectively. Even when considered

---

**16.** The Commission has provided a list of factors that might support an upward departure under § 4A1.3; it has said little about downward adjustments. However, in the cases cited herein the courts have filled the gap. In so doing, they assist in the creation of a federal " 'common law of sentencing.' "

*United States v. Norton*, 218 F.Supp.2d 1014, 1021 n. 6 (E.D.Wis.2002) (quoting *United States v. Thompson*, 190 F.Supp.2d 138, 144 (D.Mass.2002)).

**17.** I note that the *Bowser* court analyzed the departure under 18 U.S.C. § 3553(b).

in relation to his commencement of the instant offense in 1990, they are eight and five years old. I further note that predicate acts one through five—the conspiracies to commit murder—occurred between 1993 and 1996.[18] Therefore, the most serious conduct in the instant offense was separated from the priors by more than a decade. Both the Commission and the courts have considered this a primary factor in § 4A1.3 departures. *See Collins*, 122 F.3d at 1307; *Shoupe*, 988 F.2d at 447.

Second, these convictions were relatively minor in nature. The drunk driving offense was a civil violation. Several courts have concluded that the inclusion of drunk driving offenses, especially when remote in time from the instant offense, resulted in an overstatement of the seriousness of a defendant's criminal record. *See Brown*, 985 F.2d at 482; *Miranda*, 979 F.Supp. at 1043–44; *Anderson*, 955 F.Supp. at 937. The criminal damage to property and reckless use of a weapon charges were more serious, but I note that no one was injured and defendant did not appear to intend to harm anyone. *Cf. Anderson*, 955 F.Supp. at 937 (noting that defendant's wife was not hospitalized and did not sustain permanent injury from DV battery). The burglary conviction did not involve a residence but rather an attempt to steal cigarettes from a closed gas station. Courts have concluded that similar infractions were appropriately considered "minor" in the § 4A1.3 context. *See Smith*, 909 F.2d at 1169 (affirming departure where defendant's burglary conviction "involved stealing some personal property from a home,

and then taking the homeowner's car on a joy ride"); *Hughes*, 825 F.Supp. at 869 (departing where one of defendant's priors was for stealing cigarettes). Finally, these convictions are unrelated to the instant offense and do not demonstrate a specific criminal proclivity. In sum, the prior offenses are sufficiently "remote ... in time and ... distinct in seriousness and kind from ... the instant offense" to create a significant overstatement of the seriousness of defendant's criminal history. *See Miranda*, 979 F.Supp. at 1044.

Third, defendant was a young man when he committed the prior offenses—age 22 for the 1982 convictions and age 25 for the 1985 conviction. While this factor standing alone would be insufficient, it is relevant as I prepare to sentence this man now 43 years old.[19]

Finally, defendant was intoxicated when he committed his prior offenses. And, according to the PSR, defendant was regularly using cocaine during the period of the instant offense. However, it appears that defendant has now made the decision to cease his alcohol and substance abuse. While on pre-trial release, he has submitted to 11 urine tests, all negative. He has further indicated a desire to obtain substance abuse treatment while in prison. Because much of his prior criminal conduct was tied to substance abuse, I find that defendant's desire for sobriety makes him less likely to repeat his crimes, further justifying a departure under § 4A1.3.

For all of these reasons, I conclude that defendant's criminal history is significantly

---

**18.** Predicate act 6—conspiracy to distribute controlled substances—commenced for defendant in 1990.

**19.** The government cites *Pullen* for the proposition that offenses committed at ages 19 and 23 "could hardly be viewed as youthful indiscretions." 89 F.3d at 372. I agree that if all defendant could argue was that he was 22

and 25 when he committed the prior offenses, his motion would fail. However, he has established other factors that favor a departure. I would also note that in *Pullen* the prior offenses were the same as the instant offense—bank robbery. Due to the severity of the priors and their relation to the instant offense the *Pullen* court was able to conclude that a § 4A1.3 departure was not warranted.

overstated by category III. Most defendants in category III have more serious and recent convictions than does defendant Hammond. I find that he is more appropriately represented by category II. I also find that defendant's risk of recidivism is overstated by category III. Defendant has not displayed a pattern of specific criminal conduct, and he appears to be taking steps to deal with the alcohol and drug issues that fueled the commission of his crimes. I also recognize that defendant is a husband and father, with strong family ties. *See United States v. Hammond,* 204 F.Supp.2d 1157, 1164–66 (E.D.Wis.2002). He obtained his GED while incarcerated pre-trial, which shows that he is thinking about the future. These factors further support my finding that defendant is not as likely to repeat his crimes as the typical category III offender.

I therefore depart horizontally from category III to category II. The revised imprisonment range is 108–135 months. I sentence defendant to 108 months in prison. Other terms of the sentence appear in the judgment.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion for a downward departure under U.S.S.G. § 4A1.3 is **GRANTED.**